In re JET FLORIDA SYSTEM, INC., f/k/a Air Florida System, Inc., Debtor.

In re AIRPORT SYSTEMS, INC., f/k/a Air Florida, Inc., Debtor.

JET FLORIDA SYSTEM, INC., and Airport Systems, Inc., Plaintiffs,

v.

EASTERN AIR LINES, INC., Defendant.

Bankruptcy No. 84–01223–BKC–SMW. Adv. No. 85–1318–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

April 22, 1986.

John K. Olson, Tampa, Fla., for plaintiffs.

Mary Kogut-Equels, Eastern Air Lines, Inc., Miami Intern. Airport, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This adversary proceeding was tried by the court on March 6 and 7, 1986. The court having heard the testimony, examined the evidence, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law.

This is a preference action brought under 11 U.S.C. § 547 to avoid, and under 11 U.S.C. § 550 to recover, transfers made by the debtor to or for the benefit of Eastern Air Lines, Inc., on May 31 and June 26, 1984, in the aggregate amount of $3,015.601.

## I. AIR FLORIDA'S PRIMA FACIE CASE

The transfers at issue here were made as part of a settlement process under which Air Florida and Eastern cleared their mutual debts against one another through the Airlines Clearing House, Inc. ("ACH"). Under ACH agreements to which Air Florida and Eastern were parties, ACH acted as agent for both airlines in reconciling and settling debts.

During March 1984, Air Florida incurred $1,032,410 in debt to Eastern for passengers flown by Eastern on tickets sold by Air Florida. That amount was due to be paid to Eastern under ACH rules on April 30 as part of Air Florida's routine transfer of claims against other airlines and cash, including a net payment into ACH of $1,576,546. It was not timely paid because Air Florida didn't have the money.

During April 1984, Air Florida incurred $1,094,717 in debt to Eastern for passengers flown by Eastern on tickets sold by Air Florida. That amount was due to be paid to Eastern under ACH rules on May 28 as part of Air Florida's routine transfer of claims against other airlines and cash, including a net payment into ACH of $1,800,738. It was not timely paid because Air Florida didn't have the money.

As a result of its second successive default in transfers and payments to other

airlines through ACH, Air Florida was expelled from ACH on May 29, 1984. After negotiating a loan from General Electric Credit Corporation over the Memorial Day weekend, Air Florida entered into a new special agreement with ACH on May 31, 1984, and paid sufficient funds into ACH on May 31 to pay in full all amounts due for March and April transactions, including the $1,032,410 owed Eastern for March and the $1,094,717 owed Eastern for April.

During May 1984, Air Florida incurred $888,474 in debt to Eastern for passengers flown by Eastern on tickets sold by Air Florida. Under normal ACH rules, that amount was due to be paid to Eastern as part of Air Florida's routine transfer of claims against other airlines and cash, including a net payment into ACH of $1,572,-450, due June 28. However, because of the special restrictions imposed by ACH on Air Florida under the May 31st agreement, Air Florida was obliged to transfer its claims and pay the $1,572,450 into ACH on June 26th. It did so. The Air Florida bankruptcy petition was filed one week later.

In the aggregate, Air Florida satisfied antecedent obligations to Eastern of $3,015,601 as a result of transfers and payments made to ACH on May 31st and June 26th. Eastern apparently contends that Air Florida did not "pay" Eastern because Eastern was, in at least one of the ACH settlements, a net debtor. Of course, the transfer of accounts receivable or choses in action as was undertaken by Air Florida here has long been recognized as giving rise to a recoverable preference. *National Bank of Newport v. National Herkimer County Bank*, 225 U.S. 178, 32 S.Ct. 633, 635, 56 L.Ed. 1042 (1912). The transfers made here were on account of tickets "lifted" by Eastern in March, April and May, 1984, and were all on account of antecedent debt.

No evidence was presented to rebut the statutory presumption under § 547(f) that Air Florida was insolvent throughout the 90 day period prior to its July 3rd filing under chapter 11. Air Florida established through unrebutted testimony that Eastern would have received nothing in a chapter 7 liquidation of Air Florida had (a) such a proceeding been filed on July 3, 1984, (b) the transfers of May 31st and June 26th not been made and (c) Eastern been obliged to look to payment under Title 11 distribution schemes. Accordingly, each of the affirmative elements of § 547(b) was established by Jet Florida at trial.

## II. THE ROLE OF ACH

Both Air Florida and Eastern agreed contractually to settle their interline debts through ACH and, thus, agreed that payment by Air Florida to Eastern would be made on the 28th day of each month (or the first business day thereafter) for tickets lifted during the previous month. Insofar as the *timing* of payments is concerned, the role of ACH is neutral; Air Florida and Eastern could have agreed to any settlement date. By agreeing to clear through ACH, Air Florida and Eastern chose by contract to settle under the ACH timetable.

■ ACH was an agent in the settlement process. In paying ACH and agreeing to settle its $3 million in claims against Eastern, Air Florida "transferred" property to ACH for the benefit of Eastern. It is clear under § 101(48) that "transfers" include indirect dispositions of property and interests in property. This is consistent with well-established law. As stated in *National Bank of Newport v. National Herkimer County Bank*, 225 U.S. 178, 32 S.Ct. 633, 635, 56 L.Ed. 1042 (1912):

> "To constitute a preference, it is not necessary that the transfer be made directly to the creditor. It may be made to another, for his benefit. If the bankrupt has made a transfer of his property, the effect of which is to enable one of his creditors to obtain a greater percentage of his debt than another creditor of the same class, circuity of arrangement will not avail to save it."

Simply stated, transfers made by Air Florida for the benefit of Eastern through their mutual agent, ACH, are avoidable under 11 U.S.C. § 547 and recoverable under § 550(a) just as if they had been made

directly to Eastern. *In re Blanton Smith Corp.*, 37 B.R. 303 (Bkcy.M.D.Tenn.1984).

### III. EASTERN'S SETOFF DEFENSE

Eastern claims, because Eastern's debt to Air Florida was settled at the same time as Air Florida's debt to Eastern, that the contemporaneous settlements constituted a "contemporaneous exchange for new value" within the meaning of § 547(c)(1). Eastern transferred cash and claims to Air Florida in the May 31st ACH clearing aggregating $85,818 more than Air Florida transferred to Eastern. If that settlement was a "contemporaneous exchange for new value" under § 547(c)(1), then Air Florida can recover nothing as a result of the May 31st transfer.

Eastern transferred cash and claims to Air Florida in the late June ACH clearing aggregating $647,464, or $241,010 less than Air Florida transferred to Eastern. If that settlement qualifies under § 547(c)(1), then Air Florida can recover $241,010 as a result.

█ The question of whether Eastern's transfers can be treated as contemporaneous exchanges for new value turns on whether Eastern's setoff was valid under § 553(a)(3). As a general proposition, common law and other non-bankruptcy rights of setoff are preserved by the provisions of § 553. As an exception to this general rule, setoffs are not permissible (and those taken prepetition are recoverable) if the setoff debt was incurred during the 90 days before the petition was filed, the debtor was insolvent and the debt was incurred for the purpose of obtaining a right of setoff. If the setoff debt was obtained as part of an overall scheme to effect a setoff, the setoff becomes recoverable as a preference. *Matter of Gold Coast Seed Co.*, 24 B.R. 595 (BAP 9th Cir.1982). There is no "ordinary course of business" exception under § 553(a)(3). Air Florida contends that the entire ACH system was designed for the purpose of effecting setoffs and that, as a result, the setoffs so taken are not protected under § 553(a)(3). A substantial question exists, given the differ-

ences between the June *26th* date of payment and transfer by Air Florida and the June *28th* date of payment and transfer by Eastern, whether the payments were in fact contemporaneous and whether they were intended as such under the special ACH agreement to which Air Florida became a party on May 31st. The court declines to decide that question because it concludes as a matter of law that the setoffs taken here are protected under § 553(a)(3), and, accordingly, Eastern has successfully defended all but $241,010 of the transfers under its § 547(c)(1) defense.

### IV. EASTERN'S ORDINARY COURSE OF BUSINESS DEFENSE

█ Eastern has asserted a defense under § 547(c)(2), which requires it to establish, *inter alia*, that the transfers from Air Florida to Eastern were "(B) made not later than 45 days after such debt was incurred; (C) made in the ordinary course of business or financial affairs of the debtor and the transferee; *and* (D) made according to ordinary business terms."

#### A. *The 45 Day Rule*

The March 1984 ticket lift was due to be settled through ACH on April 30, 1984. Air Florida did not actually transfer cash and claims to settle its debt to Eastern of $1,032,410 until May 31, 1984, in all cases more than 45 days after the services were rendered. The court finds that the debt to Eastern was incurred when Eastern flew a passenger on an Air Florida—sold ticket, not when Eastern billed Air Florida for that debt. *Matter of Emerald Oil Co.*, 695 F.2d 833 (5th Cir.1983).

The April 1984 ticket lift was due to be settled through ACH on May 28, 1984. It was actually settled on May 31, 1984, when Air Florida transferred cash and claims to settle its debt to Eastern of $1,094,717. Eastern presented no evidence concerning the portion of that $1,094,717 which was incurred within 45 days of May 31, and has therefore not carried its burden under § 547(c)(2)(B). *In re Gulf States Marine,*

*Inc.*, 6 B.C.D. 79, 1 C.B.C.2d 650 (Bkcy.W. D.La.1980).

Eastern presented no evidence which the court finds to be credible as to the portion of·Air Florida's May 1984 debt to Eastern of $888,474 which was incurred within 45 days of the late June 1984 transfer of cash and claims by Air Florida to ACH. Eastern undertook no examination of the actual debts incurred within the relevant period and presented no evidence concerning the *actual* debts incurred within 45 days of Air Florida's payment. Accordingly, the court finds as a matter of fact that Eastern did not establish what portion of Air Florida's May 1984 debt to Eastern was incurred within 45 days of payment.

### B. *All Transfers Were Made Outside the Ordinary Course of Business and Ordinary Business Terms*

Under ACH rules, Air Florida's transfers and payments to settle March and April ticket lift were due on April 30th and May 28th, respectively. Air Florida defaulted on both and was expelled from ACH on May 29th. Its payments for March and April together with penalties and interest were made on May 31st under a special ACH agreement. Under that same special ACH agreement, Air Florida was required to pay to settle May ticket lift on June 26th, whereas ordinary ACH rules and business terms contemplated payment by Air Florida on June 28th—a significant difference given the amounts involved and Air Florida's financial condition. The court finds as a matter of fact that none of these transfers was made in the ordinary course of business and none was made according to ordinary business terms. Eastern has not met its burden under § 547(c)(2).

## V. EASTERN FAILED TO ESTABLISH THAT IT EXTENDED NEW VALUE

Eastern asserts that it gave "new value" after June 28, 1984 to Air Florida after it received its late June settlement proceeds. That "new value" was in the alleged amount of $149,195, of which $18,247 Eastern claimed was given between June 29th and July 3rd, 1984, and the balance of $130,948 was given post-petition, all of it in the form of Eastern's honoring of tickets sold by Air Florida on or before May 28, 1984.

To the extent that this defense involves pre-petition services allegedly provided by Eastern, the Court finds as a matter of fact that the evidence does not support Eastern's assertions. Eastern undertook no examination of the actual debts incurred between June 26th (or, for that matter, June 28th) and July 3rd and performed no valid statistical analysis. Accordingly, Eastern failed to establish what new value, if any, it actually gave to Air Florida during the relevant period. ·

As a matter of law, post-petition honoring of tickets by Eastern cannot establish new value under § 547(c)(4). Although some early cases find in conclusory fashion that post-petition credit extensions can be considered in assessing whether new value was given (*In re Thomas W. Garland, Inc.*, 28 B.R. 87, 90 n. 7 [Bkcy.E.D.Mo. 1983]); (*In re Keydata Corp.*, 37 B.R. 324 [Bkcy.D.Mass.1983]), more recent and analytical case law has rejected that theory. *In re Bellanca Aircraft Corp.*, 56 B.R. 339, 13 B.C.D. 1172, 1207 (Bkcy.D.Minn. 1985); *In re Columbia Packing Co.*, 44 B.R. 613 (Bkcy.D.Mass.1984; by implication); *In re Frigitemp Corp.*, 34 B.R. 1000, 1011 (S.D.N.Y.1983).

As analyzed in *Bellanca*, post-petition value given to a debtor-in-possession are given to the *estate*, not to the debtor. The purpose of the subsequent advance or new value rule under § 547(c)(4) is to encourage creditors to continue to deal with troubled businesses. Once a bankruptcy petition is filed, however, other sections of the Code provide protection to parties advancing credit. For example, § 364 provides mechanisms for secured and unsecured lending to the debtor-in-possession. The problem with allowing post-petition advances to be freely offset against otherwise avoidable preferences is that no mutuality of debt exists and control of the finances of the estate is taken out of the hands of the

Court and fiduciaries for the estate and placed in the hands of a single creditor who is hostile to the overall interests of the estate and its creditors. "To permit such offsets notwithstanding possible prejudice to other creditors would ignore the orderly mechanism established by Congress to protect all interested parties concerned." *Bellanca, supra,* 56 B.R. 339, 396–97, 13 B.C.D. 1172, 1207.

Furthermore, Eastern has failed to show that *Air Florida* (as distinct from Air Florida *ticketholders*) received any benefit from Eastern's providing travel to Air Florida-ticketed passengers after Air Florida ceased operations on July 3, 1984. Eastern had terminated its interline contract and ACH clearing arrangement with Air Florida on May 28th. Eastern honored no Air Florida tickets issued after May 28th; it extended no new credit to Air Florida and gave no new value to Air Florida. This court finds as a matter of fact that Eastern accommodated Air Florida-ticketed passengers in order to increase its own market share and to "win over" Air Florida customers.

Eastern has failed to carry its burden under § 547(c)(4).

Based upon the foregoing findings of fact and conclusions of law, the debtor has successfully established that Eastern received a preference in the amount of $3,015,601, against which Eastern has interposed valid defenses in the amount of $2,774,591, leaving a net recoverable preference for Jet Florida of $241,010. A separate final judgment will be entered.