**In re D.J. MANAGEMENT GROUP, Debtor.**

**Mark S. WALLACH, as Trustee, Plaintiff,**

v.

**VULCAN STEAM FORGING, Defendant.**

**Bankruptcy No. 90–11724 K.
Adv. No. 93–1069 K.**

United States Bankruptcy Court, W.D. New York.

Oct. 20, 1993.

Mark S. Wallach, Buffalo, NY, trustee, for plaintiff.

Mark J. Schlant, Zdarsky, Sawicki & Agostinelli, Buffalo, NY, for defendant.

MICHAEL J. KAPLAN, Chief Judge.

This is a "core" proceeding (28 U.S.C. § 157) in which the Bankruptcy Trustee seeks to avoid, as 11 U.S.C. § 547(b) "preferences," payments that were made to the defendant totalling $5,910.63 within 90 days before the Debtor filed its Chapter 11 Petition on June 8, 1990.

The defendant does not dispute that preferential payments were made, but raises a number of arguments as affirmative defenses to the Trustee's claims. The Court finds that a preferred creditor is not entitled to an offset for (1) unpaid credit extended to the Debtor-in-Possession, (2) "new value" that was fully paid, even though the payment was an unauthorized post-petition transfer, recovery of which is time-barred under 11 U.S.C. § 549(d).

■ The defendant first argues that it is entitled to a credit for $5,425.96 for unpaid invoices for goods shipped to the Debtor on credit after the filing of the Chapter 11 petition and which currently remain unpaid. The defendant argues that this amount should be credited as "new value" under the 11 U.S.C. § 547(c)(4) defense,[1] because sound bankruptcy policy in that way encourages such extension of credit to a Debtor-in-Possession. This Court is persuaded by the reasoning of the Court in *In re Bellanca Aircraft Corp.*, 850 F.2d 1275 (8th Cir.1988) that other policies militate to the contrary. The policy of encouraging the extension of credit to a D–I–P is not served if the effect is to give a *preferred* creditor an offset for unpaid post-petition credit extended; such an offset, if allowed, might be occurring at the expense of others who gave post-petition credit to the Debtor, but who were not recipients of pre-petition preferential transfers.

To take an oversimplified example, assume that C was preferred by D to the extent of $10,000. Assume that after the filing of the petition, C delivers $4,000 of goods on credit, but X (a different creditor who may or may not have done business with the debtor prior to the filing of the petition, but who, in any event, received no preferential transfers) delivers $20,000 of goods on credit to the debtor-in-possession. By the defendant's theory, only $6,000 (recovery of the $10,000, less a $4,000 offset) should be available to pay X's $20,000 claim. (If there are no administrative expenses, X would receive the $6,000.) By the Trustee's theory, he should be able to recover the $10,000 from C and that $10,000

should be available to pay the aggregate $24,000 claims of both creditors. X then would receive more than $8,000, not a mere $6,000.

At the time that credit is extended to a D–I–P, it cannot necessarily be known whether all administrative expenses will be paid. Thus defendant's theory, which would reduce the preferred creditor's exposure to the preference attack, at the expense of the non-preferred administrative claimant is not a sound policy result.

■ But more to the point, the defendant's result is not sustained by the language of the statute. As explained by the *Bellanca* Court, the "new value" exception contained in 11 U.S.C. § 547(c)(4) grants a credit only when a preferred creditor thereafter gave new credit to or for the benefit of "the debtor" as opposed to "the estate." The phrase "the debtor" is systematically used throughout the Bankruptcy Code to connote an entity different from "the estate," "the Trustee," or "the debtor-in-possession." If Congress had intended to recognize a "new value" exception for credit extended to the "estate" or to the "trustee," it would not have used the word "debtor." Furthermore, as noted by the Court in *Bellanca* and in *In re Jet Florida System, Inc.*, 59 B.R. 886 (Bankr. S.D.Fla.1986), the extension of credit in the ordinary course of business to the operating post-petition entity is governed by 11 U.S.C. § 364(a). That statute clearly states that such credit is allowable as an administrative expense under 11 U.S.C. § 503(b)(1). Such treatment would not accord C (in the above hypothetical) a status greater than X's. Thus, neither section 547(c)(4) nor section 364(a) support the defendant's theory. The administrative expense claim which the defendant possesses does not earn it a dollar-for-dollar section 547(c)(4) defense against any voidable preference it received.

■ Next the defendant argues for offset of $5,511 worth of goods delivered to the Debtor on credit after the preferential payments but before the filing of the petition.

---

**1.** It cites two cases ostensibly to that effect: *In re Quality Plastics, Inc.*, 41 B.R. 241 (Bankr. W.D.Mich.1984) and *In re Thomas Garland, Inc.*, 28 B.R. 87 (Bankr.E.D.Mo.1983). Those cases appear to cite others.

This is argued as an alternative "new value" defense. It would be clear that the defendant would be entitled to such offset under section 547(c)(4) had that credit remained unpaid, but in fact the Debtor-in-Possession paid those invoices a month after the filing of the Chapter 11 Petition (in violation of 11 U.S.C. § 549). The two-year statute of limitations contained in 11 U.S.C. § 549(d) had lapsed before those unauthorized post-petition payments were discovered; hence, the Trustee cannot affirmatively sue to recover the post-petition payments which satisfied those pre-petition invoices. The defendant argues that it is entitled to the "new value" credit even under these circumstances because (1) certain cases "recognize" a credit for "new value" in the form of the extension of credit even if that credit is later repaid, and (2) to deny the credit because of the post-petition payment would be to permit the Trustee to assert indirectly a section 549 cause of action that he is time-barred from directly asserting.

The cases cited by the defendant (for the proposition that new credit extended after the receipt of a preferential payment need not remain unpaid in order to constitute "new value") do not, in fact, stand for the asserted proposition.

These cases [2] illuminate the application of the so-called "subsequent advance rule." They do not say that fully-paid new credit is "new value" for purposes of section 547(c)(4). They say that fully-paid new credit is to be included *toward* the "new credit" element of a "subsequent advance" analysis.

In a "subsequent advance" analysis of a section 547(c)(4) defense one seeks to determine the extent to which the estate was "enriched," replenished with "money or mon-ey's worth in goods, services, or new credit" [3] by one or more exchanges between the Debtor and the preferred creditor after the challenged transfer. One does so by examining the deliveries of goods on credit (or new loan advances) after the creditor's receipt of the payment that is challenged as a preference, and setting them off against post-preference, but pre-petition, payments made by the Debtor to the creditor.[4] By determining whether, and the extent to which, the Debtor was enriched by post-preference extensions of credit, but was made less rich by post-preference payments to the creditor that are not themselves challengeable as preferences (for example, they might have been made in the ordinary course of business), the Courts attempt to determine the extent to which a (c)(4) "new value" defense is proven. Of the cases that recognize the validity of a such an analysis,[5] the cases cited by the defendant are a sub-group which holds that one need merely total all of the post-preference (but pre-petition) extensions of new credit granted, and measure them against all post-preference (but pre-petition) payments made to that creditor. Thus, under those cases, the question of whether a particular extension of new credit remained unpaid or not (as of the time of the filing of the petition) is irrelevant.

A number of other cases stand for the proposition that "new credit" advances must "remain unpaid" in order to give rise to a (c)(4) defense,[6] but this Court confesses some uncertainty as to whether any distinction in that regard is meaningful where, as here, the facts are not complex. To this Court it seems that the question is whether there is to be any focus (in a (c)(4) defense) upon how the post-preference payments to the creditor were applied: were they applied to payment of the new extensions of credit that are al-

---

2. Matter of *Isis Foods, Inc.*, 39 B.R. 645 (W.D.Mo.1984) and *In re Paula Saker & Co., Inc.*, 53 B.R. 630 (Bankr.S.D.N.Y.1985).

3. 11 U.S.C. § 547(a)(2).

4. The analysis differs from the pre-Code "net result rule" in that under that earlier rule, all transactions within the 90–day preference period were netted, rather than only those transactions which occurred subsequent to the challenged payment.

5. If I negotiate for a payment with a promise to extend new credit, how much of what I extend is truly "new value"? Some courts might not treat all of the "new credit" as "new value," and might, thus, reject any "netting" approach.

6. Consider, for example, *In re Kroh Bros. Dev. Co.*, 930 F.2d 648 (8th Cir.1991); *In re New York City Shoes, Inc.*, 880 F.2d 679 (3rd Cir.1989); and *Jet Florida System, Inc.*, 841 F.2d 1082 (11th Cir.1988) as well as *In re Keydata Corp.*, 37 B.R. 324 (Bankr.Mass.1983).

leged to constitute the new value, or were they applied to "something else," such as an older account (in which case that payment too might be a voidable preference) or a different account (such as where the creditor is not only a seller of goods to the debtor but is, perhaps, also a lender or the debtor's landlord or a lessor of the debtor's equipment).

The cases which say that the "new credit" need not remain unpaid in order to constitute "new value" under section 547(c)(4) (see footnote 2) do not hold that payments received by the creditor after the extension of new credit are not to be "charged against" the creditor in determining the amount of the (c)(4) defense. Indeed, those cases hold the opposite; all payments received by the creditor after the extension of new credit reduce the extent of the creditor's allowable (c)(4) defense. Consequently, it seems that those cases merely stand for the proposition that it is not necessary to determine whether those payments were applied to the particular invoices that are claimed to reflect the "new value" asserted under section 547(c)(4).[7]

In the case at Bar, we do not have a "stream" or "succession" of transactions between the Debtor and the creditor during the brief period after the payments were made (on 3/28/90, 4/11/90 and 5/23/90) that are alleged to be voidable preferences, and before the creditor began extending credit to "the estate" after the filing of the petition. There were only three transactions: extension of new credit (delivery of goods) of $4424 on 6/1/90, a further extension of $1087.00 on the 6/8/90 filing date, and the post-petition payment of those two bills in July, 1990. Even under the above-discussed cases cited by the defendant, these extensions of new credit would not yield a (c)(4) defense if the creditor had received a payment in similar amount a moment before the bankruptcy filing, rather than a month after it. Why should those cases yield a (c)(4) defense here? Which leads to the last argument for consideration:

The defendant argues that the two-year statute of limitations contained in 11 U.S.C. § 549(d) precludes the post-petition payment from consideration in connection with its section 547(c)(4) defense.

This argument is rejected. Whether one construes 11 U.S.C. § 549(d) to be a true "limitation" (which only bars a remedy) or a condition or qualification upon the very "right" to invoke 11 U.S.C. § 549,[8] the Trustee here is simply endeavoring to assert the fact that the defendant received a payment, regardless of the time it was received and regardless of whether or not such payment was authorized; 11 U.S.C. § 549 is irrelevant to the question of whether and when payments were made to the defendant, where any such payments are an essential element of the defense which the defendant has chosen to raise.

The Court is cited to no authority for the proposition that any limitation, qualification or condition of the sort contained in section 549(d) requires the Court to treat the fact of payment as if it never occurred simply because recognizing the fact as fact results in defeat of the defense. Stated otherwise, the fact that a particular occurrence would of itself be actionable were it not time-barred, does not preclude proof of the occurrence as a complete defense (or to disprove a defense) in a different action. Limitations or conditions on remedies, or even on rights of action, do not preclude evidence of facts.

Judgment will enter for the Trustee. As to its unpaid extensions of credit to the estate, the defendant will share with other administrative expense claimants. If it files a proof of claim under Bankruptcy Rule 3002(c)(3) after it disgorges the preference, it will also share as a general unsecured creditor, if assets reach that far.

SO ORDERED.

---

7. If, and to the extent that, this characterization of those courts' holding is incorrect, and those courts treat payments to the creditor as if they were irrelevant, the present Court disagrees with those Courts, and relies on the reasoning of the cases set forth at the footnote immediately above.

8. See 51 Am.Jur.2d, Limitation of Actions §§ 15, 22 for an explanation of the implications of this distinction.