In re GEORGE TRANSFER, INC.,
Mack Brothers, Inc., TRI–L
Transport, Inc., Debtors.

Scott D. Field, Liquidating Trustee of
George Transfer, Inc., Mack Brothers,
Inc., TRI–L Transport, Inc., Plaintiff,

v.

Maryland Motor Truck Assoc. Workers
Compensation Self–Insurance
Group, Defendant.

Bankruptcy Nos. 96–5–1292–JS, 96–
5–1293–JS, 96–5–1294–JS.
Adversary No. 98–5402.

United States Bankruptcy Court,
D. Maryland.

Jan. 31, 2001.

Kenneth Oestreicher, Whiteford, Taylor & Preston, L.L.P., Baltimore, MD, for plaintiff.

Glen H. Tschirgi, Secured Legal Services Group, Columbia, MD, to defendant.

*MEMORANDUM OPINION GRANTING LIQUIDATING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND AVOIDING PREFERENCE*

JAMES F. SCHNEIDER, Bankruptcy Judge.

This matter came on for hearing on cross motions for summary judgment upon the instant complaint brought by the liquidating trustee for the recovery of a preference. For the reasons stated, the plaintiff's motion for summary judgment [P. 25] will be granted, the defendant's motion for summary judgment [P. 27] will be denied, and the preferential transfer will be avoided.

*STIPULATED FACTS*

The debtors, George Transfer, Inc., Tri-L Transport, Inc., and Mack Brothers, Inc., were engaged in the trucking business. The defendant, Maryland Motor Truck Association Workers Compensation Self-Insurance Group (the "Group") is a Maryland trust created pursuant to Trust and Indemnity Agreement dated August 1, 1994, for the express purpose of providing workers compensation coverage as a self-insurance group, pursuant to subtitle 44, Sections 608 and 609 of Article 48 of the Annotated Code of Maryland. The debtors were members of the defendant Group under the provisions of the Trust and Indemnity Agreement.

The debtors were insolvent for a period of ninety (90) days prior to February 16, 1996, the date the debtors filed voluntary petitions for relief in this Court under Chapter 11 of the Bankruptcy Code.

George Transfer made payments by company check to the Group during the preference period for payments of premiums as follows: $14,911.98, by check dated October 31, 1995, received on November 22, 1995, and paid on November 28, 1995 (the "November payment"); and $27,963.60, by check dated October 12, 1995, received on December 18, 1995, and paid on December 27, 1995 (the "December payment"). The December payment was made on account of a premium invoice dated October 11, 1995.

The Group was a creditor of the debtors at the time the transfers were made.

The workers compensation premium for the year beginning on August 1, 1995, and ending July 31, 1996, was estimated to be $279,636. Because the debtors ceased operations in January, 1996, the workers compensation premium was adjusted to $131,404. Prior to November 16, 1995, George Transfer had paid $111,854.15 in premiums. The Group gave George Transfer a premium credit of $13,199.26. Letter dated October 24, 1995. By November 28, 1995, which was prior to the December payment, George Transfer had paid $126,766.13 in premiums and had received the said premium credit of $13,199.26. The total payments of $139,965.39, paid as of November 28, 1995, exceeded the yearly premium of $131,404.

On or about April 18, 1996, the Group refunded premiums to George Transfer in the amount of $36,524.99. The Group paid insurance claims in the amount of $34,787.10 after the transfers were made.

On July 25, 1996, the debtors filed their first amended joint plan of liquidation [P. 111]. The plan provided for the appointment of a trustee to liquidate the debtors' assets, pay allowed administrative expenses and make distributions to creditors. Scott D. Field was appointed liquidating trustee. On April 3, 1997, this Court entered an order [P. 247] confirming the plan. On February 13, 1998, the liquidating trustee filed the instant complaint to recover $71,118.91 in alleged preferences

from the defendant. In the plaintiff's motion for summary judgment, the amount sought to be recovered was reduced to $27,963.60, the amount of the December payment.

Prior to the filing of these motions for summary judgment, the parties filed similar motions [PP. 11 and 14] which were denied after a hearing, this Court having found that there were issues of fact in dispute regarding the legal status of the Group and the sequence of the debtor's payments to the Group. The parties were also given leave to do additional discovery.

After resolving disputed issues of fact, the parties are once again before the Court on motions for summary judgment. The trustee filed a new motion and the Group filed a renewed motion which raised new arguments as well as incorporated its previous arguments.

In his motion, the trustee alleged that the December payment was a preferential transfer that may be avoided and recovered. The Group then filed its renewed motion for summary judgment in which it responded to the trustee's allegations, arguing that even assuming the December payment to be a preference, it cannot be avoided and recovered because the Group already refunded the December payment to the debtors. In the alternative, the Group argued that assuming the transfer to have been a voidable preference, it was entitled to a priority claim under 11 U.S.C. § 507(a)(4).[1]

In addition to the stipulated facts, both parties attached as an exhibit to their respective motions a copy of the deposition of Ken Holland, former director of public affairs and administrator of the Maryland Motor Truck Association's Workers' Compensation Self–Insurance Group. Based upon his deposition, this Court has determined that the insurance premium of a Group member is based solely upon its payroll during the policy term. Because the payroll amount for the term is indeterminable until the term has expired, the amount of a member's premium must be estimated, obligating the member to pay the estimated amount. Once the term has expired, the Group performs an audit that takes into account the amount the member disbursed as payroll during the period, as well as the amount paid to the Group as the estimated premium. If the audit demonstrates that the estimated premium was too high, the Group refunds the difference to the member. By the same token, if the audit shows that the estimate was too low, the member must remit the balance to the Group.

In his deposition. Mr. Holland stated that the debtors paid twenty percent (20%) of the estimated premium at the beginning of the policy term. The remainder of the estimated premium was to be paid in eight (8) equal installments. Mr. Holland explained that sums credited to the debtors's account in October, 1995, represented the overpayment from the previous policy term that the Group credited to the debtors's next payment, rather than remit a check to the debtors in that amount. Because the policy terminated when the debtors ceased operations, the Group audited the debtors' account before the expiration of the policy term. This was the audit that determined that the debtors' insurance premium for the policy term had been

---

1.  Section 507(a)(4) of the Bankruptcy Code provides:
    (a) The following expenses and claims have priority in the following order:
    (4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—
    (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

    (B) for each such plan, to the extent of—
    (i) the number of employees covered by each such plan multiplied by $4,000; * less
    (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.
    * For cases commenced subsequent to April 1, 1998, the dollar amount is $4,300.
    11 U.S.C. § 507(a)(4) (1993 & Supp.2000).

overestimated and that the total dollar amount of insurance premiums that actually was $131,404. As a result, the Group returned the overpayment of $36,524.99 postpetition.

## CONCLUSIONS OF LAW

The motions for summary judgment raised the issue of whether the December payment made by the debtor to the Group was a voidable preference, and whether there were defenses available to the defendant that would enable it to defeat the trustee's complaint for avoidance. There is no dispute that the transfer satisfies the requirements of a preferential transfer under section 547(b) of the Bankruptcy Code.[2] Therefore, the Court must resolve whether the Group has any defenses under section 547(c),[3] which would render the

2. 11 U.S.C. § 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in the property—

(1) to or for the benefit of a creditor;

(2) for of on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of title 11;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of title 11.

11 U.S.C. § 547(b) (1993 & Supp.2000).

3. Section 547(c) provides:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 20 days after the debtor receives possession of such property;

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

(5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the fate of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of—

(A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or

(ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or

(B) the date on which new value was first given under the security agreement creating such security interest;

(6) that is the fixing of a statutory lien that is not avoidable under section 545 of this title;

(7) to the extent such transfer was a bona fide payment of a debt to a spouse, former

transfer unavoidable pursuant to section 547(g).[4]

A party requesting summary judgment bears the initial burden of establishing the basis for its motion and identifying those portions of the "proceedings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" that it believes demonstrate the absence of a genuine issue of material fact. Fed. R.Civ.P. 56(c), made applicable by Fed. R. Bankr.P. 7056. If the movant has met this burden, the adverse party must support its response with affidavits or other discovery devices permitted by Rule 56. Fed. R.Civ.P. 56(e).

Summary judgment may be granted against a party who "fails to make a show-ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), *quoted in Preston v. Mountainside Transport, Inc.*, 795 F.Supp. 159, 160 (D.Md.1992). The oppos-ing party can defeat the motion by submit-ting affidavits or other such evidence that "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Theard v. Glaxo, Inc.*, 47 F.3d 676, 680 (4th Cir.1995). Permissible inferences to be drawn from the underlying facts are viewed in the light most favorable to the nonmoving party, but if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment may be granted. *See Miller v. FDIC*, 906 F.2d 972, 974 (4th Cir.1990).

■ Even though a transfer may be determined to have been preferential, it may not be avoided if the transferee can prove entitlement to a defense under § 547(c). 11 U.S.C. § 547(g) (1993 & Supp.2000).

One of the clearest explanations of the issue and why the trustee is entitled to have it resolved in his favor is found in William L. Norton, Jr., Bankruptcy Law And Practice 2d (2000), § 57:20 *Subsequent Advances:*

In measuring the economic effect of an alleged preference, the basic ratio-nale of Code § 547 views a transfer as a discrete event. If that transfer is ac-companied by the immediate conveyance of equivalent value to the debtor, the transfer will not be avoided since no depletion of the estate or benefit to the recipient will have occurred. If it re-lates to some previously delivered value, receipt of that previous value will typi-cally not be considered in reaching a conclusion as to whether the transfer had the proscribed economic effects.

In certain cases, however, equitable and commercial considerations dictate that a single transfer should not be ana-lyzed in isolation from the overall course of business between the creditor and

---

spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a sepa-ration agreement, divorce decree or other order of a court of record, determination made in accordance with State or territori-al law by a government unit, or property settlement agreement, but not to the extent that such debt—

(A) is assigned to another entity, volun-tarily, by operation of law, or otherwise; or

(B) includes a liability designated as ali-mony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support; or

(8) if, in a case filed by an individual debtor whose debts are primarily consumer debts,

the aggregate value of all property that con-stitutes or is affected by such transfer is less than $600.

11 U.S.C. § 547(c) (1993 & Supp.2000).

4. Section 547(g) provides:

(g) For the purposes of this section, the trustee has the burden of proving the avoid-ability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoid-ance is sought has the burden of proving the nonavoidability of a transfer under sub-section (c) of this section.

11 U.S.C. § 547(g) (1993 & Supp.2000).

debtor. One context involves the situation in which a series of transactions occurs between the parties and involves not only repayment of debts, but also repeated extensions of credit. In these cases, Code § 547(c)(4) provides some protection to the creditor based on a view of the transactions as a whole.

Code § 547(c)(4) is derived from an analogous provision in the Bankruptcy Act. [§ 60c of the Bankruptcy Act.] That provision was commonly described as permitting a creditor to setoff subsequent grants of credit against the trustee's right to recover a preference received by the creditor. However, the reference to setoff is confusing since it mistakenly suggests a reference to the creditor's right to setoff mutual obligations, a matter dealt with elsewhere in the Code.

Consequently, we will refer to the rule in Code § 547(c)(4) as relating to the effect of subsequent advances of credit.

Specifically, Code § 547(c)(4) provides that a transfer is not avoidable to the extent that the creditor subsequently gave new, unsecured value to or for the value of the debtor. Although there is no requirement that the subsequent advance be extended as a result of the previously received preference, the rationale of this section treats the advance as if it were in effect a return of the preference, restoring the previous depletion of the estate.

Code § 547(c)(4) has its most frequent application in revolving credit relationships. In this context, it is often confused with the so-called "net result rule," an analytical approach that considers all payments and extensions of credit received during the period applicable to preference law and permits recovery of only the net gain received by the creditor. This rule was applied in cases at the beginning of the 20th Century, but it is now settled in case law that § 547(c)(4) has replaced the "net result rule" with a "subsequent advance rule." In contrast to the "net result" test, the subsequent advance rule protects preferential transfers only to the extent that subsequent advances are made. The difference in application of the two approaches can be seen in the following hypothetical: C, who is owed $4,000 90 days before bankruptcy, extends $2,000 of additional credit on each of two dates, respectively occurring 60 and 30 days before bankruptcy. C also receives a $4,000 payment 40 days before bankruptcy. This payment is a preference, not protected by other portions of Code § 547. Under the net result rule, the additional credit and the payment are netted out and there is no recovery by the trustee. Under Code § 547(c)(4), only the second advance is considered and the payment received is protected only to the extent of $2,000. The trustee recovers $2,000.

In applying the subsequent advance test, it should be noted that there is no statutory requirement that the advance be related to the preference or that the advance be made in good faith by the creditor. However, Code § 547(c)(4) does place two limits on the extent to which the subsequently advanced new value can be used to bar recovery of the preference by the trustee.

The first limit is that the subsequent new value must not be secured by a security interest that is unavoidable in bankruptcy. It is arguable that prior law is continued to the effect that a partially secured advance can be used to protect a preference to the extent that it is unsecured. However, the emerging view is that a plain meaning of the statute does not distinguish between fully and partially secured advances and that § 547(a)(4)(A) "simply disqualifies any new value that is secured." The purpose of this limitation is obvious. To the extent that the subsequent new value is secured by a valid security interest it has not effectively replenished the estate. It should be emphasized that the

section requires a prior determination of whether the security interest is valid in bankruptcy. If it is not, the creditor will lose the benefit of the security interest, but will be able to use the entire, subsequent advance to protect a prior preference.

The second limitation is that the subsequent extension of new value must not have been the subject of another transfer to the creditor which is unavoidable in bankruptcy. Thus, in the previously discussed hypothetical, if the debtor made a second payment on account of the second $2,000 advance and not avoidable in bankruptcy, that advance would not be usable to protect the preference. As with respect to security interests, application of this section requires a prior determination of whether the transfer is protected under other portions of Code § 547. If the transfer on account of the new value is protected, the creditor gains by that protection, but to that extent cannot use the new value to protect the prior preference.

It should be noted that the subsequent advance must constitute "new value." Under Code § 547(a)(2), this requires the extension of money or money's worth, or the release of a previously transferred, valid property interest. Excluded under this concept is any substitution of a new obligation for an existing one. Thus, cancellation of an old debt accompanied by replacement with a "new" debt of identical terms would not provide the protection intended in this section. Whether the defendant's forbearance in the exercise of an action or remedy may constitute new value is the subject of a split in authority, but it is generally not considered to be new value. At the very least, this presents a factual issue as to the value to be placed upon the forbearance, and the defendant would have a difficult burden of showing that value to have money's worth. New value does include the continued use of rental property.

There is a split of authority on whether this exception requires that the new value remain unpaid, at least by the debtor. One view is that the exception has three principles: (1) its subsequent advance rule made preferential transfers avoidable until offset by subsequent new value advances; (2) it retained the net result rule's policy of encouraging creditors to continue doing business with troubled debtors; and (3) it did not require new value to remain unpaid. In contrast, courts have held that the exception requires the following: (1) the creditor must have extended new value to the debtor after receiving the preferential transfer; (2) the new value must be unsecured; and (3) the new value must remain unpaid after its transfer.

The resolution of this conflict is found in the Code itself. Section 547(c)(4)(B) provides that a transfer of new value is protected only if, "on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." The focus of the inquiry is on the avoidability of the debtor's subsequent payments, and not on whether the new value remains unpaid. **Further, post-petition extensions of unsecured credit to the debtor are not encompassed by § 547(c)(4) and may not be utilized to protect prior preferential transfers.** [Emphasis supplied.]

William L. Norton, Jr., NORTON BANKRUPTCY LAW AND PRACTICE 2d § 57:20 (2000). [Footnotes omitted.]

█ The trustee/plaintiff has established that the December payment was a preferential transfer pursuant to Section 547(b). He has also established that the defendant has not demonstrated its entitlement to any of the Code's defenses. The Group argued that while it might be difficult to classify the transfer within the exceptions to preferences, avoiding the December payment would result in a double recovery to debtors that already recovered

the payment as part of the April, 1996 refund.

Unfortunately for the defendant, its refund to the debtors does not qualify under Section 547(c)(4) as "new value" because it was made postpetition. *Schwinn Plan Comm. v. AFS Cycle & Co. Ltd. (In re Schwinn Bicycle Co.),* 205 B.R. 557 (Bankr.N.D.Ill.1997); *Clark v. Frank B. Hall & Co. of Colo. (In re Sharoff Food Service, Inc.),* 179 B.R. 669 (Bankr.D.Colo. 1995); *Wallach v. Vulcan Steam Forging (In re D.J. Mgmt. Group),* 161 B.R. 5 (Bankr.W.D.N.Y.1993); *Wolinsky v. Central Vermont Teachers Credit Union (In re Ford),* 98 B.R. 669 (Bankr.D.Vt.1989); *Warsco v. Ryan (In re Richards),* 92 B.R. 369 (Bankr.N.D.Ind.1988); *Cullen v. TDK Elec. Corp. (In re Antinarelli Enter., Inc.),* 76 B.R. 247 (Bankr.D.Mass.1987); *Official Labor Creditors Comm. v. Jet Florida Systems, Inc. (In re Jet Florida Systems, Inc.),* 80 B.R. 544 (S.D.Fla.1987). *See also* John F. Wagner, Jr., Annotation, *When is Transfer from Debtor for "New Value" Within Meaning of §§ 547(a)(2) and 547(c) of the Bankruptcy Code of 1978,* 11 U.S.C.A. §§ 547(a)(2), 547(C), 111 A.L.R. Fed. 409, § 13, 1993 WL 837718 (1993 & Supp. Oct. 2000). Indeed, this Court has found no case decided under Section 547(c)(4) that permitted a transferee to successfully defend an action for the recovery of a preference based upon a subsequent advance that was made postpetition.

The response to the defendant's argument that to allow the trustee to recover this preference would entitle him to a double recovery because the amount has already been refunded is found in H.R.Rep. No. 595, 95th Cong., 1st Sess., reprinted in 1978 U.S.Code Cong. & Admin. News, 1280, quoted by Judge Patricia A. Clark in *Sharoff Food:* "[The subsequent advance rule, section 547(c)(4) ] 'was not enacted to ensure equitable treatment of creditors, but rather is intended to encourage creditors to deal with troubled businesses.'"

■ Perhaps the defendant's only solace is that it will be entitled to a fourth priori-

ty claim against the estate for contributions to an employee benefit plan pursuant to Section 507(a)(4). *Aetna Life Ins. Co. v. Montaldo Corp. (In re Montaldo Corp.),* 232 B.R. 853 (M.D.N.C.1997); *Sharoff,* 179 B.R. at 678; *In re Gerald T. Fenton, Inc.,* 178 B.R. 582 (Bankr.D.D.C.1995); *Kellman v. P.S.E. & G. (In re Jolly "N", Inc.),* 122 B.R. 897 (Bankr.D.N.J.1991); *Perlstein v. Rockwood Ins. Co. (In re AOV Ind., Inc.),* 85 B.R. 183 (Bankr.D.D.C. 1988).

WHEREFORE, the motion for summary judgment filed by the trustee will be GRANTED, the motion for summary judgment filed by the defendant will be DENIED, and the preferential transfer in the amount of $27,963.60, will be AVOIDED.

ORDER ACCORDINGLY.