**CHRYSLER CREDIT CORP.,**
Appellant,

v.

**Richard G. HALL, Trustee, Appellee.**

**Richard G. Hall, Trustee, Appellant,**

v.

**Chrysler Credit Corp., Appellee.**

Nos. CIV. 1:03cv1501, CIV. 1:03cv1502, CIV. 1:04cv93.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 20, 2004.

Joel Sanford Aronson, Ridberg, Press & Sherbill, LLP, Bethesda, MD, for Chrysler Credit Corp.

George Richard Pitts, Dickstein, Shapiro, Morin & Oshinsky, LLP, Washington, DC, for Ford Motor Company on behalf of the Trustee.

## *MEMORANDUM OPINION*

CACHERIS, District Judge.

This case consists of three consolidated appeals of the decisions by the bankruptcy court involving the insolvency of a number of motor vehicle dealerships. It arises out of an adversarial proceeding brought by the bankruptcy Trustee to avoid a series of transfers to Chrysler Credit Corporation as preferences under 11 U.S.C. § 547(b). These appeals present two questions: whether the bankruptcy court erred in holding that (1) the "subsequent new value defense," 11 U.S.C. § 547(c)(4), to a preference action requires the "new value" to remain unpaid; and (2) the Trustee in a preference action bears the burden of tracing the funds used to make preferential payments in a case involving a commingled account that included the creditor's collateral from a floating lien. The Court will reverse the bankruptcy court on the first issue and affirm its decision on the second issue.

### I. Background

On October 22, 1991, a number of motor vehicle dealerships owned and controlled by John W. Koons, Jr. filed petitions under chapter 11 of the Bankruptcy Code. Those dealerships included the following: JKJ Chevrolet, Inc., in Tyson's Corner, Va. ("JKJ Chevrolet"); JKJ Glebe, Inc., in Arlington, Va. ("JKJ Glebe"); Koons Chrysler Plymouth, Inc., in Tyson's Corner, Va. ("Koons"); JKJ Chrysler Plymouth in Alexandria, Va. ("JKJ CP"), and Brandnewco, Inc., in Woodbridge, Va. ("Brandnewco"). These cases were consolidated and subsequently converted to chapter 7. Richard Hall served as the Trustee in the bankruptcy.

On July 18, 1994, Richard Hall commenced the underlying adversary proceeding against Chrysler Credit Corporation ("Chrysler Credit") to recover payments made to Chrysler Credit by three of the consolidated debtors made within ninety days prior to the filing of the debtor's respective petitions: JKJ CP, Koons, and Brandnewco.

The Complaint contained two counts. Count I sought to recover preference payments; Count II seeks to recover fraudulent payments. These claims were assigned to Ford Motor Credit Corporation ("FMCC"), which is prosecuting the claim in the name of the Trustee. Chrysler Credit's appeal, Civil No. 1:03cv1501, concerns only Count I as it pertains to JKJ CP. The Trustee's appeals, Civil No. 1:03cv1502 and 1:04cv93, concern Count I as it pertains to Koons and Brandnewco.

Chrysler Credit provided "floor plan" inventory financing to JKJ CP, Koons, and Brandnewco. It also provided several smaller loans for working capital and equipment.[1] The loan documents for each floor plan were identical. In each case, the debtors executed promissory notes, security agreements (and amendments), and UCC filing statements. The total amount paid to Chrysler Credit during the period in question and sought to be recovered is

---

1. Inventory financing for automobile dealers is referred to in the industry as "floor plan" financing. Chrysler Credit was granted a security interest in the vehicles and other assets of each Debtor. Chrysler Credit, however, failed to perfect its lien as to JKJ CP. Chrysler Credit was an unperfected secured creditor with respect to that dealership.

alleged to be in excess of ten million dollars.

The floor plan loans functioned in the following five steps:

1. As vehicles were shipped to the dealerships, Chrysler Credit paid the manufacturer for them and added the cost of those vehicles to the dealership's line of credit. Those vehicles became additional collateral. 2. Interest would accrue on each vehicle until Chrysler Credit was repaid the principal. 3. Repayment was due five days after the vehicle was sold and the dealership received the funds. Interest on the amount outstanding was due and payable monthly in arrears. 4. So long as the dealership did not reach the maximum amount of its loan and was not in default, it could add vehicles to its inventory as it saw fit. 5. As Chrysler Credit received payment for each vehicle, the loan amount was reduced, making room for additional inventory. Thus, the [value of] the collateral and the loan balance were constantly moving up and down as vehicles were added to inventory and sold.

(Bankr.Op. of August 13, 2002 at 3.) Chrysler Credit conceded that the payments it received from JKJ CP were preferences subject to certain defenses.

In the bankruptcy court, Chrysler Credit sought summary judgment on all of FMCC's claims. FMCC sought summary judgment on its claims only as they related to JKJ CP. At oral argument on the cross-motions, the bankruptcy court denied Chrysler Credit's motion, and granted FMCC's motion finding that payments from JKJ CP to Chrysler Credit in the amount of $2,109,274.26 were preferences and that Chrysler Credit had no valid defenses. (Tr. of March 7, 2003 at 42.) It also denied that the payments by Koons and Brandnewco were preferential.

On August 15, 2002, the bankruptcy court issued an order granting summary judgment to FMCC on the avoidance of the $2,109,274.26 in preferences to Chrysler Credit. The Court made the following ruling:

4. Section 547(c)(4) provides the recipient of a preferential transfer with a defense to the extent that, subsequent to the challenged transfer, the recipient "gave new value to or for the benefit of the debtor ... not secured by an otherwise unavoidable security interest; and ... on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor." 11 U.S.C. § 547(c)(4). However, the § 547(c)(4) defense is not available to a creditor that has received payment for the advances that it contends represent subsequent new value. *In re Kroh Brothers Development Co.,* 930 F.2d 648, 653 (8th Cir.1991).

5. In this case, the evidence establishes that Chrysler Credit in fact received payment from JKJ C–P for every transfer that it contends represented subsequent new value ... and the fact that some of these repayments may have occurred postpetition does not affect the analysis. *In re D.J. Management Group,* 161 B.R. 5 (Bankr.W.D.N.Y. 1993). Under the undisputed facts of this case, a § 547(c)(4) defense is not available to Chrysler Credit.

(Bankr.Op. of August 15, 2002 at 4–5.) Chrysler Credit asserts that the bankruptcy court erred when it concluded that the payments received by Chrysler Credit from JKJ CP were recoverable and not subject to the "new value" defense of 11 U.S.C. § 547(c)(4).

On January 9, 2003, the remainder of the case—the claims against Koons CP and Brandnewco—proceeded to trial. Oral argument as to the issues was de-

ferred until May 8, 2003 to permit the filing of trial memoranda and proposed findings of fact and conclusions of law by the parties. At trial, the Trustee offered the testimony of Joseph Crisafulli, the former Vice President of Finance for the JKJ Debtors. He testified that: (1) both Koons CP and Brandnewco maintained single operating bank accounts into which receipts were deposited; and (2) those accounts contained funds that were not proceeds of any collateral of Chrysler Credit and were therefore commingled accounts. (Tr. of January 9, 2003 at 42–45.) Neither party presented evidence tracing the alleged preferences either to or not to Chrysler Credit's collateral in the commingled accounts. Rather, both parties pointed the proverbial finger at the other, claiming that it was their opponent's burden to trace the funds. On October 15, 2003, the bankruptcy court entered an order and Memorandum Opinion.

The bankruptcy court described the facts and legal issues before it as follows:

> The chapter 7 trustee seeks to recover as preferences under § 547 a series of pre-petition payments to defendant Chrysler by debtors Brandnewco and Koons in the total respective amounts of $3,346,580.43 and $3,116,005.27. The parties agree that as to these payments all elements of preferential transfers are present except for that of § 547(b)(5), which requires that the creditor must have received more than it would otherwise receive in a chapter 7 liquidation.
>
> Throughout the preference period, Chrysler held a "floating lien" on each dealership's vehicle inventory, including the proceeds of collateral. According to the debtors' financial statements Chrysler was undersecured as to each company both at the beginning of the 90 day preference period and on the date the chapter 11 petitions were filed.

> The payments in question were made from the respective operating accounts of the debtors. Each of these accounts contained funds representing proceeds of Chrysler's collateral and also funds from various intercompany transfers. Chrysler argues that the related debtor corporations engaged in a check-kiting scheme by which cash was merely shifted among the corporations and accordingly that such deposits to Brandnewco and Koons accounts should be disregarded. If intercompany deposits are to be disregarded, it is argued, then all payments to Chrysler during the preference period would have been made from Chrysler's collateral proceeds and therefore could not have been preferences.

> The trustee, on the other hand, argues that the case operating accounts were fungible and held not only Chrysler collateral proceeds but other receipts along with the intercompany transfers. Although the trustee is unable to trace the funds in the operating accounts he argues that Chrysler has the burden of proof to establish that the payments were derived from its collateral, and failing that the trustee must prevail.

> It can bee seen from the statement of the parties' positions that the ultimate issue for the court is to determine which party has the burden to prove the nature and source of the debtors' payments to Chrysler.

(Bankr.Op. of Oct. 15, 2003 at 7–8.)

The bankruptcy court concluded, relying upon *Batlan v. Transamerica Commercial Fin. Corp.*, 265 F.3d 959 (9th Cir.2001) held:

> the trustee has failed in his burden because the evidence of payments to Chrysler and intercompany fund transfers simply does not establish that Chrysler benefitted in excess of its lien position during the preference period.

In other words, there is no reliable evidence that Chrysler received more than it would have in a chapter 7. The court is unable to determine the precise source of any payment from the debtor to Chrysler.

(Bankr.Op. of October 15, 2003 at 15.) The bankruptcy court, accordingly, rejected the Trustee's contention that the payments to Chrysler Credit from Koon's CP and Brandnewco were preferences and granted judgment to the Defendant. Chrysler Credit appeals the bankruptcy court's opinion of August 15, 2002, and FMCC appeals the bankruptcy court's opinion of October 15, 2003. These appeals are currently before the Court.

## II. Standard of Review

■ Jurisdiction is proper pursuant to 28 U.S.C. § 158(a). Under 28 U.S.C. § 158(a), the district court sits as an appellate court in bankruptcy, and its review of the district court's decision is plenary. *In re Southeast Hotel Prop. Ltd. P'ship,* 99 F.3d 151, 154 (4th Cir.1996). Findings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo. Id.; accord In re Wingfield,* 284 B.R. 787, 789 (E.D.Va.2002).

■ The reviewing court should set aside the decisions of the bankruptcy court only when it determines "(1) that the decision was based on an erroneous conclusion of law, (2) that the record of the proceedings contain no evidentiary basis for the decision, or (3) that the factual findings of the court are 'clearly erroneous.'" *Wingfield,* 284 B.R. at 789 (citing *In re Jackson,* 121 F.3d 698 (4th Cir.1997)).

## III. Civil No. 1:03cv1501

The question presented by this appeal is whether the "subsequent new value defense," 11 U.S.C. § 547(c)(4), to a preference action requires that the "new value" advanced by the creditor remain unpaid. The Court holds that it does not.

A bankruptcy trustee may set aside certain pre-petition transfers, generally referred to as preferences. *See Lubman v. C.A. Guard Masonry Contractor, Inc. (In re Gem Constr. Corp. of Va.),* 262 B.R. 638, 644 (Bankr.E.D.Va.2000). Property brought back into the estate under this section is shared by a debtor's unsecured creditors on a pro rata basis. *Id.*

A trustee may avoid a transfer as a preference if it meets the following criteria:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Section 547(b) promotes two goals of the bankruptcy code: First, the avoidance power promotes the "prime bankruptcy policy of equality of distribution among creditors," and second, "the avoidance power discourages creditors from attempting to outmaneuver each other in an effort to carve up a financially

unstable debtor and offers a concurrent opportunity for the debtor to work out its financial difficulties in an atmosphere conducive to cooperation." *In re Gem Constr. Corp. of Va.*, 262 B.R. at 644.

■ The Trustee bears the burden to prove all five elements of its case. *Lease-A-Fleet, Inc. v. Wolk (In re Lease-A-Fleet)*, 151 B.R. 341, 347 (Bankr.E.D.Pa. 1993); *Glinka v. Bank of Vt. (In re Kelton Motors, Inc.)*, 130 B.R. 170, 176 (Bankr. D.Vt.1991) (holding that the Trustee must prove each element of a preference claim by a preponderance of the evidence).

■ If the Trustee carries this burden, the creditor then has the burden to prove the nonavoidability of the transfer under subsection (c) of § 547. *See In re Gem Const.*, 262 B.R. at 645. Section 547(c) supplies a number of possible defenses to a preference action. In this matter, the relevant subsection is § 547(c)(4), which provides the following:

(c) The trustee may not avoid under this section a transfer—

. . . .

(4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise unavoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor;

11 U.S.C. § 547(c)(4). This is the so-called "subsequent new value defense" to a Trustee's preference action. It is grounded in "the principle that the transfer of new value to the debtor will offset the payments, and the debtor's estate will not be depleted to the detriment of other creditors." *In re Gem Const.*, 262 B.R. at 645.

■ It is undisputed that to satisfy the first two elements of the subsequent new value defense the creditor must give unsecured new value and this new value must be given *after* the preferential transfer. *See Mosier v. Ever-Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d 228, 231 (9th Cir. 1995); *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.)*, 706 F.2d 171, 172 (6th Cir.1983). The circuits, however, are not in agreement as to whether the new value extended must remain unpaid. As the Court in *IRFM* detailed, the approach adopted by a majority of court holds that section 547(c)(4) contains a third element: the new value must remain unpaid. *See Kroh Bros. Dev. Co. v. Continental Constr. Eng'rs, Inc. (In re Kroh Bros. Dev. Co.)*, 930 F.2d 648, 653 (8th Cir.1991) ("section 547(c)(4) is not available to a creditor to the extent the creditor has received payment from the debtor for the goods or services constituting new value"); *New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc.)*, 880 F.2d 679, 680 (3d Cir.1989); *Charisma Investment Co., N.V. v. Airport Sys., Inc. (In re Jet Florida Sys., Inc.)*, 841 F.2d 1082, 1083 (11th Cir.1988); *In the Matter of Prescott*, 805 F.2d 719, 731 (7th Cir.1986).

The rationales for requiring that the new value go unpaid are "(1) if new value has been repaid by the debtor, the estate has not been replenished and; (2) the creditor is permitted the double benefit of a new value defense and the repayment of the new value." *IRFM*, 52 F.3d at 231 (citing *Kroh Bros.*, 930 F.2d at 652). This position can be best summarized as the replenishment rationale: the preference should only be unavoidable to the extent the creditor has "replenished" the estate.

More recently, however, courts and commentators have rejected this theory, favoring a different approach that does not require that the new value remain unpaid.

See *IRFM*, 52 F.3d 228, 232; *Laker v. Vallette (In the Matter of Toyota of Jefferson, Inc.)*, 14 F.3d 1088, 1093 n. 2 (5th Cir.1994); *Pay 'N Pak Stores, Inc. v. Slide-Co. (In re PNP Holdings Corp.)*, 167 B.R. 619, 629 (Bankr.W.D.Wash.1994); *Boyd v. The Water Doctor (In re Check Reporting Servs., Inc.)*, 140 B.R. 425, 431–34 (Bankr.W.D.Mich.1992). These cases focus on whether the new value has been paid for by "an otherwise unavoidable transfer." *IRFM*, 52 F.3d at 232.

Considering the two approaches, the Court finds the first approach to be inaccurate and unsupported by the language of the statute. The approach adopted by the Ninth Circuit in *IRFM* comports with the plain language of section 547(c)(4). Statutory interpretation necessarily begins with an analysis of the language of the statute. *Chris v. Tenet*, 221 F.3d 648, 651 (4th Cir.2000) (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985)). When analyzing the meaning of a statute, a court must first "determine whether the language at issue has a plain and unambiguous meaning." *Chris*, 221 F.3d at 651 (citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). If the language is plain and "the statutory scheme is coherent and consistent," the court need not inquire further. *Chris*, 221 F.3d at 651–52 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).

The Court agrees with the Ninth Circuit that § 547(c)(4) is "complicated ... [but] not ambiguous...." 52 F.3d at 231. The subsequent new value defense requires the following elements: (1) a transfer by the debtor; (2) to or for the benefit of a creditor; (3) after such transfer, the creditor gave new value to or for the benefit of the debtor; (4) the new value was not secured by an otherwise unavoidable security interest; and (5) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor. 11 U.S.C. § 547(c)(4). The statute on its face does not include the requirement that the new value remain "unpaid." The word "unpaid" is wholly absent from the statutory text.

The requirement that the new value remain unpaid is "inaccurate and confusing paraphrase of a clearly stated statutory purpose;" it is a judicial gloss that has been attached to section 547(c)(4). *See Check Reporting Serv.*, 140 B.R. at 433 (quoting *In the Matter of Isis Foods, Inc.*, 39 B.R. 645, 653 (W.D.Mo.1984)) ("the judicially evolved new result rule [which] should be avoided in cases involving the construction and application of the new subsequent advance rule provided in section 547(c)(4)").

The proper inquiry is whether the new value has been paid for by an "otherwise unavoidable transfer." *IRFM*, 52 F.3d at 231. The district court in *Check Reporting Services* engaged in a thorough analysis of this phrase and discredits the cases requiring that the new value remain unpaid. *See* 140 B.R. at 434—36. The analysis in *Check Reporting Services* and *IRFM* is the correct one. The statutory text does not require that the new value remain unpaid, and the bankruptcy court erred by including such a requirement. There is no reason to add a judicially created gloss to the already rococo language and phrasing of § 547(c)(4). The Court holds that the subsequent new value defense is permitted unless the debtor repays the new value by a transfer which is otherwise unavoidable.[2] 52 F.3d at 232.

**2.** The Ninth Circuit in *IRFM* provided an

illustrative example of how a court should

This analysis comports with both the legislative history and with the policy underlying the statute. First, the Court notes that Congress dropped the requirement that "the new credit [remain] unpaid" when it rewrote the statute. Section 60(c), the predecessor of 11 U.S.C. 547(c)(4), provided:

If a creditor has been preferred, and afterward in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estate, *the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy* may be set off against the amount which would otherwise be recoverable from him.

11 U.S.C. § 96(c) (1978). When Congress rewrote the subsequent new value defense, the italicized language was omitted from Section 547(c)(4). The phrase "unpaid" is conspicuously absent from the new section. The Court sees no reason to reinsert a phrase from a prior statute that Congress intentionally deleted.

This interpretation of 547(c)(4) is also supported by the underlying purpose of the statute. As the district court stated in *IRFM*:

The purpose of section 547 is twofold. First, enabling a trustee to avoid preferential transfers allows the trustee to secure equality of distribution among the unsecured creditors by preventing a debtor from benefitting a particular creditor on the eve of bankruptcy. Second, the new value exception encourages creditors to continue to do business with financially troubled debtors, with an eye towards avoiding bankruptcy altogether.

52 F.3d at 232. Requiring that the new value remain unpaid would discourage creditors from having any dealings with a financially troubled debtor. For example, Chrysler Credit could have loaned the vehicles to another dealership and been able to retain the payments for the loan. Instead, FMCC recovered both the initial payments to Chrysler Credit and the payments on the intervening subsequent advances. (*See* Appellant Reply at 2.) Requiring the subsequent new value to remain unpaid would place the creditor extending new value in a worse position vis-a-vis the other creditors. *See IRFM*, 52 F.3d at 232 ("By refusing to permit the creditor to receive some benefit for the transfer of new value, the proposed rule would put the creditor in a worse position than those creditors who chose not to deal with the debtor."). The Court finds such a rule antithetical to the policy of the bankruptcy code and refuses to adopt it.

The Court concludes that the bankruptcy court erred in rejecting Chrysler Credit's § 547(c)(4) defense, because the "new

---

apply the phrase "otherwise unavoidable transfer":

If the debtor has made payments for goods or services that the creditor supplied on unsecured credit after an earlier preference, *and if these subsequent payments are themselves voidable as preferences* (or on any other ground), then under section 547(c)(4)(B) the creditor should be able to invoke those unsecured credit extensions as a defense to the recovery of the *earlier* voidable preference. On the other hand, the debtor's subsequent payments might not be voidable on any other ground and not voidable under section 547, because the goods and services were given C.O.D. rather than on a credit, or because the creditor has a defense under section 547(c)(1), (2), or (3). In this situation, the creditor may keep his payments but has no section 547(c)(4) defense to the trustee's action to recover the earlier preference. In either event, the creditor gets credit only once for goods and services later supplied.

52 F.3d 228, 231–32 (quoting Vern Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand. L.Rev. 713, 788 (1985) (emphasis added and footnotes omitted)).

value" was repaid. Therefore, the Court will remand the case for the bankruptcy court to analyze the Chrysler Credit's § 547(c)(4) claim in a manner consistent with this Opinion and to calculate the amount, if any, of the transfers to Chrysler Credit voidable under § 547(b). In particular, the bankruptcy court should determine whether JKJ CP made otherwise unavoidable transfers to Chrysler Credit.

### IV. Civil Nos. 1:03cv1502; 1:04cv93

■ The issue presented by these two appeals, brought by FMCC, is whether the bankruptcy court erred in deciding that the proof by the Trustee in a preference action that payments were made to an undersecured creditor from a commingled account was insufficient to carry the Trustee's burden of proof under Bankruptcy Code §§ 547(b)(5) and (g), even though such proof would have been sufficient to establish, under applicable provisions of the Uniform Commercial Code, that the creditor had no lien upon the funds received. The Court holds that the bankruptcy court did not err, because the Trustee bore the burden under 11 U.S.C. § 547(g) to establish each element of a preference claim by a preponderance of the evidence, including that Chrysler Credit received more than it would have under a chapter 7 liquidation. In order to establish that the transfers enabled Chrysler Credit to receive more than it would in a liquidation, the Trustee had to show the transfers were not derived from the creditor's collateral.

In support of its appeals, FMCC argues that the provisions of the Uniform Commercial Code for establishing a security interest control the burdens of proof in an action under § 547(b). FMCC contends that the Trustee's burden of proof under 547(g) was satisfied by establishing that Chrysler Credit was undersecured and the challenged transfers were made from commingled funds: "the Bankruptcy Court effectively substituted a federal methodology for determining whether a creditor holds a lien in commingled funds for the methodology provided in applicable nonbankruptcy law—in this case, the Uniform Commercial Code." (Appellant Brief at 5.)

Outside of a bankruptcy proceeding, the Uniform Commercial Code ("UCC") supplies the applicable law for determining a security interest in commingled funds. Under UCC § 9-306(2),[3] "a security interest continue in collateral notwithstanding sale, exchange or other disposition thereof ... and also continues in any identifiable proceeds ...." A creditor must be able to identify the proceeds for the security interest to continue to attach to those proceeds. *See In re Bumper Sales, Inc.*, 907 F.2d 1430, 1437 (4th Cir.1990). To identify proceeds of collateral in a commingled account, courts rely upon tracing principles developed under the law of trusts and have employed the "lowest intermediate balance rule." *See Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 206 B.R. 394, 403 n. 9 (Bankr.E.D.Va.1997) ("Though never expressly used in this context by courts in the Fourth Circuit, they have employed the lowest intermediate balance rule when tracing proceeds under Article 9 of the Uniform Commercial Code, *Sony Corp. v. Bank One, W. Va.*, 85 F.3d 131 (4th Cir.1996)").[4]

---

3. *See* Va.Code Ann. § 8.9-306(2) (repealed 2000). Former UCC § 9-306 is now codified, with some changes, at Va.Code Ann. § 8.9A-315 (Michie 2001). The former Article 9 provides the applicable law to the bank accounts at issue in this case.

4. The lowest intermediate balance rule functions in the following manner:

The rule, which operates on a common-sense view that dollars are fungible and cannot practically be earmarked in an account, provides a presumption that pro-

As there is no applicable Fourth Circuit case on point, FMCC relies on a number of cases in other jurisdictions for the proposition that the burden of proof does not change in a preference action from the UCC rule. In *Daly v. Radulesco (In re Carrozzella & Richardson)*, a trustee sought to avoid pre-petition transfers as preferences made by the debtor law to a trust client from a commingled account. 247 B.R. 595, 597–98 (2d Cir. BAP 2000). The bankruptcy court held that the transfers were not preferences, because the funds transferred were the client's property held in an express trust by the debtor. *Id.* at 599. The bankruptcy appellate panel reversed, holding that the clients bore the burden to trace their property to a particular trust asset. *Id.* at 600. The court of appeals held that "recipients of preferential payments must satisfy common law tracing requirements to the same degree as any other party asserting that it has superior rights to assets held by a debtor." *Id.* at 601. The panel went on to describe the burdens upon the parties:

> Once the Trustee established that the Debtor had control of the [commingled] Account ... by showing that the funds in the Account were used by the Debtor for all manner of expenditures, then the burden of proof shifted to the Defendants to prove (1) that the Debtor had only legal title to the Defendant's money

and (2) to trace their interest to their specific property.

*Id.* at 602.[5] *See also First Federal of Michigan v. Barrow*, 878 F.2d 912, 915 (6th Cir.1989) ("having asserted a constructive trust of which they were beneficiaries, the [investors] assumed the burden of identifying the sums of their entitlements by tracing the trust funds through [debtor's] commingled accounts"); *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 343 (Bankr.S.D.N.Y.1999) ("Since the bankruptcy trustee has the burden of proof, the beneficiary's obligation to trace will not arise unless the bankruptcy trustee first carries her initial burden of going forward .... the bankruptcy trustee carries her burden of proving that the account was property of the debtor by showing that the debtor had legal title to the account, and the account consists of commingled trust and personal funds."); *Howarth v. Universal C.I.T. Credit Corp.*, 203 F.Supp. 279, 282 (D.C.Pa.1962) ("The court may not assume the source of the money in the bank. The burden is upon [the creditor] to trace cash proceeds received by [the debtor] from the disposition of secured collateral into the bank deposits.").

The case relied on by the bankruptcy court, *Batlan v. Transamerica Commercial Fin. Corp. (In re Smith's Home Furnishings, Inc.)*, involved a preference action brought by a trustee to avoid over $12 million in transfers made to a creditor with

---

ceeds remain in the account as long as the account balance is equal to or greater than the amount of the proceeds deposited. The proceeds are identified by presuming that they remain in the account even if other funds are paid out of the account. Under the rule, however, if the balance of the account dips below the amount of deposited proceeds, the prior security interest in the identifiable proceeds abates accordingly. This lower balance is not increased if, later, other funds of the debtor are deposited in the account.

*Sony Corp. of America*, 85 F.3d at 138 (internal citations and alterations omitted).

**5.** On remand, the bankruptcy court rejected the bankruptcy appellate panel's decision, holding that the Trustee bore the burden to trace. *Daly v. Deptula (In re Carrozzella & Richardson)*, 255 B.R. 267, 272 (Bankr. D.Conn.2000). The court reasoned that the bankruptcy appellate panel's decision was not binding and merely persuasive authority. *Id.* at 272–73.

a floating lien. 265 F.3d 959, 961–62 (9th Cir.2001). The bankruptcy court held that the trustee failed to meet his burden under § 547(b)(5), and the district court affirmed the bankruptcy court's decision. *Id.* at 962. The Ninth Circuit affirmed the lower courts' ruling, holding that the creditor was not required to prove that funds in a commingled account were traceable to its collateral. *Id.* at 967. The court of appeals based its decision not only upon the language of both sections 547(b)(5) and 547(g), but also on the fact that evidence of the debtor's finances was more readily available to the Trustee than to the creditor:" [I]n bankruptcy, it is the trustee who accedes to the debtor's books and records and has easier access and a better ability to divine the financial activities of the debtor in its last months of operation." *Id.*

In the instant case, the Court agrees with Chrysler Credit and the bankruptcy court. The clear language of both sections 547(b)(5) and 547(g) place the burden on the Trustee to prove all five elements of its case. *Lease–A–Fleet,* 151 B.R. at 347. Certainly, in a case not involving a bankruptcy, a secured creditor would bear the burden of tracing its collateral in a commingled account. The bankruptcy code, however, reverses the burden of proof.[6] The Trustee must show that the creditor would receive more because of the prefer-

ence, than it would receive if the case were a chapter 7 liquidation. This provision "simply carries out the common sense notion that a creditor need not return a sum received from the debtor prior to bankruptcy if the creditor is no better off vis-a-vis the other creditors of the bankruptcy estate than he or she would have been had the creditor waited for liquidation and distribution of the assets of the estate." *Hager v. Gibson,* 109 F.3d 201, 210 (4th Cir.1997). Since a secured creditor, generally, is entitled to priority payment out of its collateral and to receive the equivalent value of its collateral, 4 *Alan N. Resnick et al., Collier on Bankruptcy* § 506.02 (Lawrence P. King ed., 15th ed.2003), the Trustee had to show that Chrysler Credit received moneys that were not proceeds of its collateral. The Trustee must prove that Chrysler Credit, as an undersecured creditor, received payments from a source other than collateral or proceeds, because "[p]ayments to a partially secured creditor from property not covered by its lien ... have a preferential effect, because in a chapter 7 liquidation that creditor would receive a distribution for the full value of its secured claim, in addition to the payments already received." 5 *Id.* § 547.03.

Tracing is a method for the Trustee to carry its burden; by tracing the funds, the Trustee may show that the transfers did

---

6. FMCC's argument that "the Bankruptcy Court effectively substituted a federal methodology for determining whether a creditor holds a lien in commingled funds for the methodology provided in applicable nonbankruptcy law" (Appellant Brief at 5) is inapposite. Congress, not the bankruptcy court, changed the methodology for determining whether a creditor holds a lien in commingled funds for the purposes of a preference action. The bankruptcy code switches the burden from the secured creditor to the Trustee for proving the lien. Certainly, requiring the Trustee to carry a heavy burden to avoid an otherwise lawful transfer is within Con-

gress's plenary power over bankruptcies, which derives from the constitutional imperative "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const., Art. I, § 8. Congress may preempt some state activity on matters affecting bankruptcy, *see Koffman v. Osteoimplant Techn., Inc.,* 182 B.R. 115, 123 (D.Md. 1995), and state laws that conflict with the Bankruptcy Code are unconstitutional, *see Perez v. Campbell,* 402 U.S. 637, 656, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (holding state law that frustrated purpose of Bankruptcy Act preempted).

not come from the secured creditor's collateral in the commingled account. The bankruptcy court correctly held that the Trustee failed to prove that Chrysler Credit received more because of the preference than it would have received in a chapter 7 liquidation.

FMCC contends that the bankruptcy court confused the burdens of production and persuasion, failing to shift the former to Chrysler Credit: "while the burden of persuasion remained at all times upon the Trustee, when the Trustee satisfied that burden of persuasion, the burden of production shifted to Chrysler Credit." (Appellant Reply at 3–4.) FMCC's argument is entirely based on a faulty premise: the Trustee failed to meet either his burden of production or persuasion. It is undisputed that neither party produced any evidence concerning tracing the alleged preferences. The bankruptcy court held, "there is no reliable evidence that Chrysler received more than it would have in a chapter 7." (Bankr.Op. of Oct. 15, 2003 at 15.) Only after the Trustee has shown that the prepetition transfer is avoidable, i.e. carried its burden of persuasion, does the burden of proof shift to the defendant, against whom recovery or avoidance is sought, to prove that it is entitled to one of the affirmative defenses to preferential transfers as set forth in section 547(c) of the Code. *Matter of Anderson–Smith & Assoc., Inc.,* 188 B.R. 679, 684 (Bankr. N.D.Ala.1995). Since the Trustee was required to prove by a preponderance that Chrysler would have received less than it did in a chapter 7, the burden never shifted to Chrysler to rebut the Trustee's claim. The bankruptcy court did not confuse the burdens in this case; the Trustee failed to carry its burden of production.

This allocation of the burden of proof agrees with the with public policy considerations. As one commentator noted:

A number of considerations influence the rules allocating the burden of proof, such as which party seeks to have the court alter the status quo, whether one party alleges an event that appears improbable, whether any social or public policy militates for or against recovery, and whether certain evidence is available more readily to one party than the other.

Graham C. Lilly, *An Introduction to the Law of Evidence* 54 (3d ed.1996). Certainly some of these considerations are present in the instant case. It is the Trustee and not the creditor that asks the Court to alter the status quo and undo an otherwise legal transfer. Generally, "[t]he law presumes that payments made by the debtor to creditors are valid." 5 *Collier on Bankruptcy* § 547.13. As the bankruptcy court stated in *Carrozzella & Richardson,* when rejecting the opinion of the bankruptcy panel of the Second Circuit, preference defendants are not in the classic creditor role, "asking a court to recognize their beneficial rights in property *for the purpose of recovering such property.* Rather they seek retrospective acknowledgment of those rights as a *defense* to a bankruptcy trustee's attempt to avoid a transfer to them...." 255 B.R. at 275 (emphasis in original). Even though a secured party usually bears the burden of proving the existence of its own security interests, "it is not surprising that the burdens on a party seeking to avoid or undo a transaction which was perfectly legal and proper at the time that it was effected should be greater than the burdens on a debtor fighting for its economic life in seeking permission to use a secured creditor's cash collateral and/or trying to withstand a secured creditor's foreclosure of its assets." *In re Lease–A–Fleet, Inc.,* 151 B.R. at 347. In a preference action, it appropriate that a party asserting a security interest as a "shield rather than as a sword" not bear

the burden of tracing the funds to its collateral. *Cf. In re Carrozzella & Richardson*, 255 B.R. at 276.

Moreover, as mentioned by the *Smith's* court, the trustees are in the best position to gather and analyze the Debtor's records, because they "accede[ ] to the debtor's books and records and ha[ve] easier access and a better ability to divine the financial activities of the debtor in its last months of operation." *Id.* at 967. Therefore, the evidence showing the balances of the debtor's accounts and the transfers made are more readily available to the trustee than to the creditor. This also militates against assigning the burden of proof to the creditor. Accordingly, the Court finds that public policy supports assigning the burden of proof to the Trustee.

The Court holds that Congress decided that the burden of proof in preference actions brought under section 547 of the bankruptcy code should be governed by federal law. Specifically, the bankruptcy code assigns the burden to the bankruptcy trustee to prove that a creditor received more than it would have in a chapter 7 liquidation. In this case, FMCC and the Trustee failed to prove this essential element of their prima facie case at trial, because they could not show that Chrysler Credit received more than it would have in a chapter 7 liquidation. Since the Trustee could not show that the transfers were not derived from Chrysler Credit's collateral, the Bankruptcy Court correctly entered judgment in favor of Chrysler Credit. Accordingly, the Court will affirm the Bankruptcy Court.

### V. Conclusion

For the foregoing reasons, the Court will reverse and remand Civil No. 1:03cv1501 to the bankruptcy court for proceedings consistent with this opinion. The Court will also affirm the decision of the bankruptcy court in Civil Nos. 1:03cv1502 and 1:04cv93. An appropriate Order will issue.