In re PHOENIX RESTAURANT
GROUP, INC., et al.,
Debtors.

Phoenix Restaurant Group,
Inc., et al., Plaintiffs,

v.

Ajilon Professional Staffing LLC d/b/a
Ajilon Finance f/k/a Accountants
On Call, Inc., Defendants.

Bankruptcy No. 301–12036.
Adversary No. 303–0740A.

United States Bankruptcy Court,
M.D. Tennessee.

Dec. 1, 2004.

Samuel K. Crocker, Timothy G. Niarhos, Crocker & Niarhos, Nashville, TN, for Consolidated Debtors acting by and through Plan Administrator.

Philip D. Irwin, David G. Thompson, Neal & Harwell, Nashville, TN, for Ajilon Professional Staffing LLC.

### MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

In this preference action, the Defendant moves for summary judgment with respect to the subsequent new value defense in 11 U.S.C. § 547(c)(4). To prevail under § 547(c)(4) the Defendant must demonstrate that the debtor did not repay the new value with an otherwise unavoidable transfer. Post petition transfers to or from the estate are not considered in § 547(c)(4) analysis. Because this Defendant raises other § 547(c) defenses that are not ready for adjudication, the § 547(c)(4) defense cannot be resolved on summary judgment.

## I. FACTS

Phoenix Restaurant Group, Inc. ("PRG"), a Georgia corporation, resulted from a 1996 merger between Denwest Restaurant Corp. and American Family Restaurants. The principal business of PRG was operating Denny's family style restaurants pursuant to franchise agreements with Advantica Restaurant Group, Inc. (and its predecessors and successors). Throughout the 1990's PRG acquired Denny's locations, and expanded into other restaurant concepts, including Black–Eyed Pea restaurants. In September 2001, PRG operated 96 Denny's restaurants and 91 Black–Eyed Pea restaurants primarily in Florida, Texas, Arizona, Colorado and Oklahoma.

On October 18, 2001, an involuntary Chapter 7 proceeding was filed against PRG in the Middle District of Florida. The involuntary case was transferred to the Middle District of Tennessee by order entered October 29, 2001. On October 31, 2001, PRG moved to convert the involuntary Chapter 7 case to a voluntary Chapter 11. Also on October 31, 2001, five affiliates of PRG—Denam, Inc., Phoenix Foods, Inc., Black–Eyed Pea U.S.A., Inc., Prufrock Restaurants of Kansas, Inc. and Texas BEP, L.P.—filed voluntary Chapter 11 cases in the Middle District of Tennessee. An order converting PRG's case to Chapter 11 was entered November 6, 2001.

The Debtors remained in possession. On April 29, 2002, the Debtors filed a Joint Liquidating Plan of Reorganization and Disclosure Statement. On October 23, 2002, the First Amended Joint Liquidating Plan was confirmed (the "Confirmed Plan").

On October 31, 2003, the Plan Administrator filed over 200 adversary proceedings to avoid prepetition transfers as preferential under 11 U.S.C. § 547(b). This preference action against Ajilon seeks avoidance and recovery of payments totaling $53,239.58.

Ajilon provides temporary professional staffing. During the 90 days before bankruptcy, Ajilon provided bookkeepers and accountants to PRG. Weekly, each temporary staffer would submit time sheets to Ajilon indicating hours worked for PRG. Ajilon would bill PRG at an hourly rate per accountant or bookkeeper. Ajilon separately paid all payroll costs, taxes and fringe benefits. Ajilon received seven payments from PRG during the prepetition preference period. Ajilon also received one relatively large post petition payment of $30,545.91 on October 23, 2001.

In its answer, Ajilon asserts the statutory defenses of contemporaneous exchange for new value, 11 U.S.C. § 547(c)(1), ordinary course of business, 11 U.S.C. § 547(c)(2), and subsequent new value, 11 U.S.C. § 547(c)(4). Ajilon's Motion for Summary Judgment addresses only the defense in § 547(c)(4). Supported by the affidavit of Linda Sodney, Ajilon asserts that the subsequent new value defense renders unavoidable all payments by PRG within the preference period.

Plaintiff responded with the affidavits of Neil H. Demchick. Plaintiff now calculates that the avoidable preference in this case totals either $32,908.71 or $16,111.28. (Demchick 2d Aff. ex. A & B.) As discussed below, the larger recovery results if the post petition payment of $30,545.01 is considered to be an "otherwise unavoidable" transfer under § 547(c)(4)(B), because it would then reduce the amount of new value available to Defendant. The smaller alternative recovery disregards the post petition payment.

## II. Analysis

### A. Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to in-

terrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989). The court is not to " 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Browning v. Levy,* 283 F.3d 761, 769 (6th Cir.2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for the plaintiff.' " *Id.*(quoting *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505).

The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. at 325, 106 S.Ct. 2548. The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). All inferences are drawn in the light most favorable to the nonmoving party. *Spradlin v. Jarvis (In re Tri–City Turf Club, Inc.),* 323 F.3d 439, 442 (6th Cir.2003) (citations omitted). The party opposing a motion for summary judgment, however, " 'may not rest upon mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' The party opposing the motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.' " *In re Tri–City Turf Club, Inc.,* 323 F.3d at 442–43 (internal citations and quotations omitted). *See also Liberty*

*Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). " 'If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate.' " *Braithwaite v. Timken Co.,* 258 F.3d 488, 493 (6th Cir.2001) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 349 (6th Cir.1998)).

### B. *11 U.S.C. § 547(c)(4) Defense*

■ The Bankruptcy Code empowers the trustee in bankruptcy to recover for the benefit of all creditors transfers within 90–days of bankruptcy that have the effect of preferring one creditor over others. 11 U.S.C. § § 547 & 550. The trustee bears the burden of proof on all elements of a preference listed in § 547(b). 11 U.S.C. § 547(g); *Corzin v. Decker, Vonau, Sybert & Lackey, Co., L.P.A. (In re Simms Constr. Servs. Co.),* 311 B.R. 479, 484 (6th Cir. BAP 2004). The preference defendant has eight statutory defenses described in § 547(c), and bears the burden of proof on each defense. 11 U.S.C. § 547(g); *see Chrysler Credit Corp. v. Hall,* 312 B.R. 797, 803 (E.D.Va.2004).

Section 547(c)(4) is short-handedly referred to as the subsequent advance exception to preference recovery. *Waldschmidt v. Ranier (In re Fulghum Constr. Corp.),* 706 F.2d 171, 172 (6th Cir.), *cert. denied,* 464 U.S. 935, 104 S.Ct. 342, 343, 78 L.Ed.2d 310 (1983). This statutory defense provides:

> (c) The trustee may not avoid under this section a transfer—
>
> . . . .
>
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—

(A) not secured by an otherwise un-avoidable security interest; and

(B) on account of which new value the debtor did not make an otherwise un-avoidable transfer to or for the benefit of such creditor[.]

11 U.S.C. § 547(c)(4).

■ The logic of this defense is that an otherwise preferential transfer is not avoidable to the extent that, after the transfer, the creditor gave the debtor "new value" in a form that replenished the debt-or. *See, e.g., Williams v. Agama Sys., Inc. (In re Micro Innovations Corp.)*, 185 F.3d 329, 336 (5th Cir.1999). Replenishing the debtor for purposes of the § 547(c)(4) de-fense has several facets. Fundamentally, the debtor must receive "new value" de-fined by § 547(a)(2) as follows:

(a) In this section—

. . . .

(2) "new value" means money or mon-ey's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debt-or or the trustee under any applicable law, including proceeds of such prop-erty, but does not include an obli-gation substituted for an existing obli-gation.

11 U.S.C. § 547(a)(2).

■ The new value given after the pref-erential transfer helps the defendant only if it is not secured by an unavoidable secu-rity interest. 11 U.S.C. § 547(c)(4)(A). *See In re Micro Innovations Corp.*, 185 F.3d at 334–35. This makes sense because the debtor is not enhanced if the new value given after the preferential transfer is sub-ject to liens and would not balance the loss caused by the preferential transfer.

■ Also, the new value must not have been paid for by the debtor with a transfer that cannot itself be avoided. 11 U.S.C. § 547(c)(4)(B). In other words, the new value must remain an enhancement of the debtor notwithstanding transfers (typi-cally payments) to the creditor by the debtor after the new value was given. A payment by the debtor to the creditor after the creditor gave new value does not unravel the defense if the payment can itself be recovered as an avoidable trans-fer.

■ The policy behind § 547(c)(4) is two fold. One: It encourages creditors to con-tinue to do business with troubled busi-nesses, which may allow some to avoid bankruptcy altogether. *See, e.g., In re Micro Innovations Corp.*, 185 F.3d at 332; *Fitzpatrick v. Rockwood Water Wastewa-ter & Natural Gas Sys. (In re Tennessee Valley Steel Corp.)*, 201 B.R. 927, 939 (Bankr.E.D.Tenn.1996) (citations omitted). Two: "A subsequent advance is excepted because a creditor who contributes new value in return for payments from the incipient bankruptcy ... should not later be deemed to have depleted the bankrupt-cy estate to the disadvantage of other creditors." *Charisma Inv. Co. v. Airport Sys., Inc. (In re Jet Florida Sys., Inc.)*, 841 F.2d 1082, 1083 (11th Cir.1988) (per curiam). *See also Chrysler Credit Corp. v. Hall*, 312 B.R. at 803 ("It is grounded in 'the principle that the transfer of new val-ue to the debtor will offset the payments, and the debtor's estate will not be depleted to the detriment of other creditors.' ") (quoting *Lubman v. C.A. Guard Masonry Contractor, Inc. (In re Gem Constr. Corp. of Va.)*, 262 B.R. 638, 645 (Bankr.E.D.Va. 2000)). New value that replenishes the debtor balances the preferential effect of a prior transfer from the debtor. *See, e.g., Waldschmidt v. Mid–State Homes, Inc. (In re Pitman)*, 843 F.2d 235, 241–42 (6th Cir.1988).

This Motion for Summary Judgment raises two issues under § 547(c)(4)(B): 1) Whether post petition transfers to or from the estate affect the subsequent new value defense; and 2) application of the "otherwise unavoidable" element of § 547(c)(4)(B). Ajilon contends that it provided temporary staffing services throughout the preference period and that the new value of these services subsequent to each prepetition payment by the Debtor reduces the recoverable preference to $0. Ajilon's analysis takes no account of the post petition payment of $30,545.01.

Plaintiff argues that Ajilon's methodology gives credit for "new value" without regard to whether that new value was subsequently paid for by PRG with a transfer that is not "otherwise avoidable" as required by § 547(c)(4)(B). In this regard, Plaintiff asserts that other preference defenses pleaded by Defendant must be adjudicated before the § 547(c)(4) defense can be applied. At oral argument, and in supplemental filings, Plaintiff recalculates its preference demand, giving credit for new value but disqualifying services paid for by payments that become unavoidable under § 547(c)(4) itself. Plaintiff criticizes Ajilon's failure to account for the post petition payment, which Plaintiff would characterize as an otherwise unavoidable transfer that reduces new value under § 547(c)(4)(B).

### 1. Post Petition Transfers

■ The plain language of § 547 closes the preference window at the petition, limiting the § 547(c)(4) defense to new value supplied and payments made before the debtor crosses into bankruptcy. As explained by the Eighth Circuit in *Bergquist v. Anderson–Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1284 (8th Cir.1988), post petition goods or services provided to a debtor in possession do not qualify as "new value" for purposes of § 547(c)(4): " 'for the *benefit of the debtor* * * *' ... impl[ies] that subsequent advances of new value are only those given pre-petition, because any post-petition advances are given to the debtor's *estate*, not to the debtor." (emphasis in original). *Accord Field v. Maryland Motor Truck Assoc. Workers Compensation Self–Insurance Group (In re George Transfer, Inc.)*, 259 B.R. 89, 96 (Bankr. D.Md.2001) ("Unfortunately for the defendant, its refund to the debtors does not qualify under Section 547(c)(4) as 'new value' because it was made postpetition. Indeed, this Court has found no case decided under Section 547(c)(4) that permitted a transferee to successfully defend an action for the recovery of a preference based upon a subsequent advance that was made postpetition.") (citing *Schwinn Plan Comm. v. AFS Cycle & Co. Ltd. (In re Schwinn Bicycle Co.)*, 205 B.R. 557 (Bankr.N.D.Ill.1997)); *Clark v. Frank B. Hall & Co. of Colo. (In re Sharoff Food Serv., Inc.)*, 179 B.R. 669, 678 (Bankr. D.Colo.1995) ("[T]he specific language 'to or for the benefit of the debtor' [indicates] that the subsequent advances of new value are only those given prepetition, because any post-petition advances are given to the debtor's estate, not the debtor."); *Wallach v. Vulcan Steam Forging (In re D.J. Mgmt. Group)*, 161 B.R. 5 (Bankr. W.D.N.Y.1993); *Wolinsky v. Central Vermont Teachers Credit Union (In re Ford)*, 98 B.R. 669 (Bankr.D.Vt.1989); *Warsco v. Ryan (In re Richards)*, 92 B.R. 369 (Bankr.N.D.Ind.1988); *Cullen v. TDK Elec. Corp. (In re Antinarelli Enter., Inc.)*, 76 B.R. 247 (Bankr.D.Mass.1987); *Official Labor Creditors Comm. v. Jet Florida Sys., Inc. (In re Jet Florida Sys., Inc.)*, 80 B.R. 544 (S.D.Fla.1987).

■ Similarly, § 547(c)(4)(B) focuses on actions of the debtor "on account of which

new value *the debtor did not make* an otherwise unavoidable transfer ...." Throughout § 547, "the debtor" refers to the *prepetition* entity that transferred property or engaged in business with the preference defendant. Had Congress intended § 547(c)(4)(B) to account for payments made post petition, the section would have included something like "an otherwise unavoidable transfer of an interest of the estate in property to or for the benefit of such creditor." Instead, Congress disqualified only new value paid for by "the debtor" with an otherwise unavoidable transfer. 11 U.S.C. § 547(c)(4)(B).

Closing § 547(c)(4) analyses at the petition is consistent with other Code remedies that only apply post petition. Creditors who continue to supply the debtor-in-possession with goods and services post petition are provided special priority for payment from the bankruptcy estate. *See* 11 U.S.C. §§ 364 & 503(b); *see also Wolinsky v. Central Vermont Teachers Credit Union (In re Ford)*, 98 B.R. 669, 683 (Bankr.D.Vt.1989) ("Once the bankruptcy petition is filed ... other sections of the Code provide protection to parties advancing credit. For example, § 364 provides mechanisms for secured and unsecured lending to the debtor-in-possession. The problem with allowing post-petition advances to freely offset against otherwise avoidable preferences is that no mutuality of debt exists and control of the finances of the estate is taken out of the hands of the Court and fiduciaries for the estate and placed in the hands of a single creditor who is hostile to the overall interests of the estate and its creditors. 'To permit such offsets notwithstanding possible prejudice to other creditors would ignore the orderly mechanism established by Congress to protect all interested parties concerned.' ") (quoting *Jet Florida Sys., Inc. v. Eastern Air Lines, Inc. (In re Jet Florida Sys., Inc.)*, 59 B.R. 886, 890 (Bankr.S.D.Fla.

1986)). A post petition transfer that is not authorized by the court or by the Code can be recovered by the trustee or debtor-in-possession under § 549: "the trustee may avoid a transfer of property of the estate that occurs after the commencement of the case[.]" 11 U.S.C. § 549(a)(1). Notice that § 549(a)(1) refers to a transfer of *property of the estate*, and not to a payment made by *the debtor*.

■ At its heart, the preference power in § 547 levels the playing field for creditors that do business with a debtor during the slide into bankruptcy. *See Union Bank v. Wolas*, 502 U.S. 151, 160–61, 112 S.Ct. 527, 533, 116 L.Ed.2d 514 (1991) (" 'The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section—that of equality of distribution.' ") (quoting H.R.Rep. No. 595, 95th Cong., 177–78, *reprinted in* 1978 U.S.C.C.A.N. 5787, 6137, 6138); *Gregory v. Community Credit Co. (In re Biggers)*, 249 B.R. 873, 879 (Bankr.M.D.Tenn.2000) (accord). These considerations change when the petition is filed and the debtor becomes a bankruptcy estate under the

administration of the bankruptcy court and subject to the scrutiny of creditors, committees, the U.S. Trustee, etc.

This case illustrates how bankruptcy policies collide and uncertainty flourishes if preference defense analysis under § 547(c)(4) slides past the petition. The $30,545.01 post petition payment to Ajilon may have been an avoidable (unauthorized) post petition transfer that could have been recovered under § 549 without consideration of the elements of a preference (or the defenses) under § 547. Neither the debtors-in-possession nor the Plan Administrator brought an action against Ajilon under § 549 within the two year limitation in § 546(a). In essence, the Plan Administrator would use the limitation on a defense to preference recovery in § 547(c)(4) as a backdoor recovery of the now unavoidable post petition transfer to the Defendant. Ironically, it would be the failure of the debtors-in-possession or Plan Administrator to timely commence the § 549 action that would render the post petition payment unavoidable for § 547(c)(4) purposes.

In its reply brief, the Plaintiff argues that the post petition payment to Ajilon was "authorized" by various post petition orders with respect to payment of employees and thus the payment was "not avoidable" for reasons other than the limitation in § 546. Compounding the irony, Ajilon responds that the $30,545.01 payment it received post petition was *not* authorized and was "otherwise avoidable" had the debtors-in-possession or Plan Administrator acted timely. All of this nonsense flows from the misconception that post petition events recast the preference defense in § 547(c)(4).

### 2. *"Otherwise Unavoidable"*

Plaintiff is correct that Ajilon's accounting fails to respect the "otherwise unavoidable" provision in § 547(c)(4)(B); but Plaintiff's recalculation then misreads the same provision to allow § 547(c)(4) to affect itself.

 Proper accounting for new value for § 547(c)(4) purposes is thoroughly explained by Judge Waldron in *Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 315 B.R. 443 (Bankr.S.D.Ohio 2004). Judge Waldron convincingly discredits the "remains unpaid" test applied by some courts[1] in favor of the plain meaning of the statute, double negatives notwithstanding. The statute requires that "the new value defense [be] permitted unless the debtor repays the new value by a transfer which is otherwise unavoidable." *Id.* at 471. *Accord Jones Truck Lines, Inc. v. Central States (In re Jones Truck Lines, Inc.)*, 130 F.3d 323 (8th Cir.1997); *Mosier v. Ever–Fresh Food Co. (In re IRFM, Inc.)*, 52 F.3d 228 (9th Cir.1995); *Laker v. Vallette (In re Toyota of Jefferson, Inc.)*, 14 F.3d 1088 (5th Cir.1994); *Chrysler Credit Corp. v. Hall*, 312 B.R. 797 (E.D.Va. 2004); *Field v. Maryland Motor Truck Assoc. Workers Compensation Self–Insurance Group (In re George Transfer, Inc.)*, 259 B.R. 89, 95 (Bankr.D.Md.2001); *Pay 'N Pak Stores, Inc. v. Slide–Co. (In re PNP Holdings Corp.)*, 167 B.R. 619 (Bankr.W.D.Wash.1994); *Boyd v. The Water Doctor (In re Check Reporting Servs.,*

---

**1.** *See Kroh Bros. Dev. Co. v. Continental Constr. Eng'rs, Inc. (In re Kroh Bros. Dev. Co.)*, 930 F.2d 648, 653 (8th Cir.1991) (creditor who has been paid for the new value by the debtor may not assert a new value defense); *New York City Shoes, Inc. v. Bentley Int'l, Inc. (In re New York City Shoes, Inc.)*, 880 F.2d

679, 680 (3d Cir.1989) ("the debtor must not have fully compensated the creditor for the 'new value' as of the date that it filed its bankruptcy petition"); *In re Jet Florida Sys., Inc.*, 841 F.2d at 1083 (same); *In re Prescott*, 805 F.2d 719, 731 (7th Cir.1986) (same).

*Inc.),* 140 B.R. 425 (Bankr.W.D.Mich.1992) (the requirement that new value remain unpaid is an " 'inaccurate and confusing paraphrase of a clearly stated statutory purpose' ") (quoting *Valley Candle Mfg. Co. v. Stonitsch (In re Isis Foods, Inc.),* 39 B.R. 645, 653 (W.D.Mo.1984)).

Had Congress intended "otherwise un-avoidable" to mean that new value must remain unpaid, it would simply have said so. Indeed, § 60(c) of the Bankruptcy Act, the predecessor to § 547(c)(4), specifically provided that only "the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable" from the creditor as a preference. 11 U.S.C. § 96(c) (repealed). The word "unpaid" is conspicuously absent from § 547(c)(4). Reinserting a word from the prior statute that Congress omitted is supported by no theory of statutory construction. *See Chrysler Credit Corp. v. Hall,* 312 B.R. at 805. *See generally* Robert H. Bowmar, *The New Value Exception to the Trustee's Preference Avoidance Power: Getting the Computations Straight,* 69 Am. Bankr.L.J. 65, 73–4 (1995).

"Otherwise" in the phrase "otherwise unavoidable" is also not ambiguous. Otherwise means "in a different way or manner." Webster's Third New Int'l Dictionary 1598 (1981). "Otherwise" in § 547(c)(4) means a transfer unavoidable for reasons other than § 547(c)(4). The Plaintiff's contrary calculations in this adversary proceeding are not consistent with the language or logic of § 547(c)(4). As Professor Countryman explained:

> If the debtor has made payments for goods or services that the creditor supplied on unsecured credit after an earlier preference, *and if these subsequent payments are themselves voidable as preferences* (or on any other ground), then under section 547(c)(4)(B) the creditor should be able to invoke those unsecured credit extensions as a defense to the recovery of the *earlier* voidable preference. On the other hand, the debtor's subsequent payments might not be voidable on any other ground and not voidable under section 547, because the goods and services were given C.O.D. rather than on a credit, *or because the creditor has a defense under section 547(c)(1), (2), or (3).* In this situation, the creditor may keep his payments but has no section 547(c)(4) defense to the trustee's action to recover the earlier preference. In either event, the creditor gets credit only once for goods and services later supplied.

Vern Countryman, *The Concept of a Voidable Preference in Bankruptcy,* 38 Vand. L.Rev. 713, 788 (1985) (emphasis added and footnotes omitted). *See also* Robert H. Bowmar, *The New Value Exception to the Trustee's Preference Avoidance Power: Getting the Computations Straight,* 69 Am. Bankr.L.J. 65, 76 (1995) ("A payment by the debtor made subsequent to a particular extension of new value does not diminish the new value unless the payment is not avoidable on any basis other than the (c)(4) exception itself. ... It is only if the payment is unavoidable because of the applicability of one of the other exceptions in subsection (c) or because of the applicability of some other Code provision, that the payment should be applied to reduce the new value.") (footnotes omitted).

█ That "the debtor did not make an *otherwise unavoidable transfer*" to the creditor on account of the new value is a predicate to the subsequent new value defense; "it requires the court to analyze other available defenses to paid new value first[.]" *In re Roberds, Inc.,* 315 B.R. at 473 (emphasis added). In other words, application of § 547(c)(4) "requires prior de-

termination of whether the transfer is protected under *other portions* of Code § 547." *In re George Transfer, Inc.,* 259 B.R. 89 at 95 (emphasis added).

Ajilon has asserted defenses to this preference action under § 547(c)(1) and (c)(2). Ajilon's Motion for Summary Judgment with respect to § 547(c)(4) fails to account for payments by the Debtor that may be "otherwise unavoidable" because of these other defenses. Until the other § 547(c) defenses are adjudicated, the math necessary to do the temporally sensitive calculation in § 547(c)(4) cannot be performed.

### III. Conclusion

Ajilon's Motion for Summary Judgment will be denied by separate order.

### ORDER

For the reasons stated in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED that the Defendant's motion for summary judgment is DENIED.